**LAMAR BUILDERS, INC., Appellant,**

v.

**GUARDIAN SAVINGS & LOAN ASSOCIATION, Appellee.**

No. 01–90–00092–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 26, 1990.

Douglas L. Anderson, Maurice Bresenhan, Campbell, Athey, Zuikowski & Bresenhan, Houston, for appellant.

R. Scott Hogarty, Janet E. Militello, Liddell, Sapp, Zivley, Hill, Houston, for appellee.

Before EVANS, C.J., and DUGGAN and MIRABAL, JJ.

## OPINION

EVANS, Chief Justice.

This is an appeal from an interlocutory order denying appellant's, Lamar Builders, Inc., application for temporary injunction. Tex.Civ.Prac. & Rem.Code Ann. § 51.014(4) (Vernon Supp.1990). Lamar sought to enjoin the holder of the letters of credit, appellee Guardian Savings and Loan Association, from presenting them to the issuing bank, Lockwood National Bank. Lamar also sought to enjoin Lockwood from paying the letters.

In cause number 01–90–00184–CV, we temporarily enjoined the presentment and payment of the letters to protect the subject matter of this appeal.

In one point of error, Lamar contends that the trial court abused its discretion in denying the application for temporary injunction.

The appeal of an order denying a temporary injunction is an appeal from an interlocutory order; therefore, the merits of the moving party's case are not presented for appellate review. *Davis v. Huey,* 571 S.W.2d 859, 861 (Tex.1978); *Philipp Bros., Inc. v. Oil Country Specialists, Ltd.,* 709 S.W.2d 262, 265 (Tex.App.—Houston [1st Dist.] 1986, writ dism'd). At a hearing on an application for a temporary injunction, the only issue before the trial court is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending a trial on

the merits. *Davis*, 571 S.W.2d at 862; *Philipp Bros.*, 709 S.W.2d at 265.

■ Presentment of a letter of credit may not be enjoined unless there is a showing by the account party of fraud by the beneficiary. *Philipp Bros., Inc. v. Oil Country Specialists, Ltd.*, 787 S.W.2d 38, 40 (Tex.1990); Tex.Bus. & Com.Code.Ann. § 5.114(b)(2) (Vernon Supp.1990). The situation constituting fraud under § 5.114(b)(2) has been described as follows:

> The situation of fraud in which the wrong doing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served.

*Philipp Bros.*, at 40; *Philipp Bros.*, 709 S.W.2d at 265; *GATX Leasing Corp. v. DBM Drilling Corp.*, 657 S.W.2d 178, 182 (Tex.App.—San Antonio 1983, no writ).

Appellate review of an order denying a temporary injunction is strictly limited to whether the trial court has committed a clear abuse of discretion. *Davis*, 571 S.W.2d at 861–62; *Philipp Bros.*, 709 S.W.2d at 265. A trial court abuses its discretion when it acts without reference to any guiding rules and principles, i.e., when its act was arbitrary or unreasonable, *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *Philipp Bros.*, 709 S.W.2d at 265, or when the facts and law permit the trial court to make only one decision, and the trial court rules to the contrary. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

The appellate court may not substitute its judgment for that of the trial court. *Davis*, 571 S.W.2d at 862; *Philipp Bros.*, 709 S.W.2d at 265. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court does not demonstrate an abuse of discretion. *Downer*, 701 S.W.2d 238; *Philipp Bros.*, 709 S.W.2d at 265. An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *Davis*, 571 S.W.2d at 862. Because no findings of fact or conclusions of law were filed, we must uphold the trial court's action on any legal theory supported by the record. *Id.*

■ The record from the hearing conducted by the trial court shows that Lamar is a general contractor in the construction business. In 1988, Lamar submitted a bid to be the general contractor for an apartment project in Miami, Florida. Lamar's bid was selected, and it entered contract negotiations. Guardian, which was the entity that would finance the project, but not a named party to the contract, played a dominant role in the negotiations. Lamar's vice-president, Robert Partin, testified that under the terms of the contract, Lamar would receive monthly funding from Guardian during the 15–month duration of the project. The monthly funding consisted of one-fifteenth of Lamar's administrative costs, overhead, and profit for the entire project. Lamar would use a portion of the funding to pay its subcontractors. In lieu of a performance bond, Lamar agreed to deliver to Guardian two $250,000 letters of credit. Guardian made the monthly payments for the first three months of the project. In November 1988, Lamar delivered the first $250,000 letter of credit.

On January 12, 1989, Guardian notified Lamar that the payments would be reduced to one-eighteenth of the administrative costs, overhead, and profit because Guardian now estimated that the project would not be completed for 18 months. Partin disagreed with this estimate, concluding that completion would occur sooner. The reduction in the amount of the payments reduced Lamar's cash flow by $17,000 per month. Partin testified that Lamar never would have agreed to deliver the letters of credit if Lamar had known that Guardian's monthly payments would be reduced.

In April 1989, the contract was amended. The second letter of credit was reduced from $250,000 to $150,000 and was delivered to Guardian. The amendment also provided that Guardian would not pay the administrative costs, overhead, and profit until they totalled $112,000 and Lamar had delivered a third letter of credit in June in the amount of $100,000. Guardian never

made the $112,000 payment, and Lamar never posted the third letter of credit.

In May 1989, the amount of the monthly funding was changed to payments based on the percentage of completion of specific items on the project. Guardian had withheld $56,000 toward the third letter of credit. Partin objected to this change and testified that Lamar would not have delivered the second letter of credit if he had known that payments would later be based on a completion basis.

Partin further testified that, in October 1989, one of Guardian's agents told the subcontractors that Lamar was going to be fired. This threw the project into turmoil. Subsequently, an agreement was reached; Lamar remained the general contractor, and Guardian provided weekly funding in October and November. During the last week of December, Guardian expressed concern over the weekly funding exceeding the percentage of completion, and in January 1990, refused to provide further funding. Lamar then walked off the project. Partin further testified that Lamar would be insolvent if the letters of credit were paid.

Another controversy that arose during the project concerned Guardian's failure to approve Lamar's change orders, which authorized work not in the scope of the contract. Lamar contends that Guardian owes Lamar $142,000 for additional work by Lamar, which was covered by change orders not approved by Guardian.

The contract reflects that Lamar was to be paid periodically based upon the percentage of the completion of the project. Defendant's exhibit one also indicates that as early as January 1989, Guardian felt that the payments to Lamar exceeded the percentage of completion of the project.

After Lamar rested at the hearing, Guardian moved for judgment contending that Lamar failed to prove fraud. The trial court granted Guardian's motion.

Lamar contends that, contrary to the written contract, Guardian orally represented that Lamar would receive equal monthly payments in a fixed amount for the duration of the project, and changed the method of calculation of these payments on four occasions. Lamar further asserts that it posted the letters in reliance on these representations and that Guardian's acts constituted fraud. Lamar also claims that Guardian's agent's statements that Lamar would be taken off the job shows Guardian's fraudulent intent. Lamar argues that it established a prima facie showing of fraud and that, because its evidence was uncontroverted, the trial court abused its discretion by denying the application for temporary injunction.

We note, however, that the facts are not undisputed, and there is controverting evidence concerning whether Guardian committed any "wrongdoing." The written contract provides that Lamar would be paid based on the percentage of the project completed. The initial, monthly, one-fifteenth payments were based on the project taking 15 months to complete and assumed that one-fifteenth of the project would be completed each month. The record also reflects that Guardian concluded that the monthly funding was exceeding the percentage of completion and adjusted the payment accordingly on several occasions. Lamar has not shown that, under the contract, Guardian was prevented from making these adjustments. Further, Lamar and Guardian came to an agreement to keep Lamar on the job after Guardian's agent told the subcontractors that Lamar would be fired. Finally, Lamar showed that the change orders had been submitted, that Lamar completed the work reflected therein, and that Guardian had not approved the change orders. However, Lamar never showed that approval of change orders could not be withheld under the contract or that the withholding of approval was wrongful.

Because there is some evidence that Guardian was exercising its rights under the contract, the evidence, at best, is conflicting on the issue of whether Guardian committed wrongdoing that has "vitiated the entire transaction so that the independence of the issuer's obligation would no longer be served." *Philipp Bros.*, at 40. A trial court does not abuse its discretion

when it bases its decision on conflicting evidence. *Davis*, 571 S.W.2d at 862. Accordingly, the trial court did not abuse its discretion by denying Lamar's application for temporary injunction.

We overrule Lamar's sole point of error and affirm the order of the trial court.

The temporary injunction issued in cause number 01–90–00184–CV is dissolved effective at noon, May 3, 1990.