FIRST CITY, TEXAS–HOUSTON N.A., Modern World Media, Inc., and Mark W. White, Appellants,

v.

GNAT ROBOT CORPORATION and H. Ross Perot, Appellees.

No. 01–91–00508–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 17, 1991.

Max Hendrick, Kenneth Hughes, Jonathan B. Clayton, Vinson and Elkins, Houston, for appellants.

J. Graham Hill, Houston, for appellees.

Before SAM BASS, DUNN and HUGHES, JJ.

OPINION

SAM BASS, Justice.

This is an appeal from a June 5, 1991, order enjoining the appellant, First City, Texas–Houston N.A. (First City), from drawing on an irrevocable letter of credit issued by NCNB Texas National Bank (NCNB) for the benefit of First City. TEX. CIV.PRAC. & REM.CODE ANN. § 51.014(4) (Vernon Supp.1991).

On August 13, 1990, Modern World Media, Inc. (Modern World) and First City entered into a loan agreement for $5,500,-000 (the Loan Agreement). This loan refinanced an earlier loan of $2,500,000 (used to purchase two Beaumont radio stations) and provided funds for new station equipment and working capital. The new loan was supported by personal guaranties of William J. Mason (Mason) and Mark W. White (White), principals in Modern World, and an irrevocable letter of credit number 99612 issued in favor of First City by NCNB for the account of H. Ross Perot (Perot) in the amount of $2,500,000.

As part of the loan transaction, Modern World, Mason, White, and Gnat Robot Corporation (GRC), a company owned by Perot, entered into a stock option agreement on August 10, 1990 (the Option Agreement). Under the fifth paragraph of the Option Agreement, if Modern World fails to pay GRC the costs of providing the letter of credit, GRC is entitled to withdraw the letter of credit as collateral for the loan. The Option Agreement was referenced in the Loan Agreement and a copy was attached.

The letter of credit expires August 31, 1991, but automatically extends for an additional year after August 13, 1991, or any subsequent expiration date, but not beyond February 9, 1993, unless NCNB notifies First City in writing at, least 30 days prior to such expiration date, that it will not be renewed. Drafts against the letter of credit must be accompanied by a letter purportedly signed by an officer of First City, containing either or both of the following statements:

An Event of Default, as such term is defined in the Loan Agreement, dated as of August 13, 1990, by and between First City, Texas–Houston, N.A. and Modern World Media, Inc., as amended, restated, supplemented, increased and/or otherwise modified (the "Loan Agreement"), has occurred and is continuing. The amount of $_____ being drawn under Letter of Credit No. 99612 issued by NCNB Texas National Bank represents all or part of the unpaid amount due and payable to us in connection with the Loan Agreement. or

An Event of Default, as such term is defined in the Promissory Note, dated as of August 13, 1990, made by Mark W. White, Jr., payable to the order of First City, Texas–Houston, N.A. in the original principal amount of $400,000.00, as amended, supplemented and/or other-

wise modified (but not increased), or any promissory note made in substitution or replacement therefor or in renewal, extension, modification or rearrangement (but not increase) thereof (the "White Note"), has occurred and is continuing. The amount of $_____ being drawn under Letter of Credit No. 99612 issued by NCNB Texas National Bank represents all or part of the unpaid amount due and payable to us in connection with the White Note.

Under the letter of credit, NCNB engages to honor any draft under and in compliance with the terms of the letter of credit on or before the expiration date. The letter of credit contains no provision allowing GRC or Perot to withdraw the letter of credit, nor does it reference or incorporate the Option Agreement.

GRC and Perot assert that, on February 4, 1991, GRC tendered to Modern World an NCNB invoice for letter of credit costs. According to GRC and Perot, the invoice remained unpaid, and so, on March 21, 1991, GRC exercised its right under the Option Agreement and withdrew the letter of credit by so notifying First City; however, NCNB did not join in the withdrawal notice to First City.

On June 5, 1991, Perot and GRC sued Modern World, White, Mason, and First City seeking (1) a declaratory judgment that GRC was entitled to withdraw the letter of credit under the Loan and Option Agreements, (2) specific performance of the Option Agreement provision entitling GRC to withdraw the letter of credit, and (3) a temporary injunction enjoining First City from transferring, changing, presenting, or removing from its vault the letter of credit. Following a hearing on May 28, 1991, the trial court enjoined First City from transferring, assigning, modifying, presenting, or removing from its vault the letter of credit. The trial court found that GRC and Perot had demonstrated a proba-

ble right to recovery under the Declaratory Judgment Act because First City was bound by the fifth paragraph of the Option Agreement and that GRC and Perot would suffer irreparable harm if the injunction were not granted.

▪ Appellate review of an order granting or denying a temporary injunction is strictly limited to determining if the trial court has committed a clear abuse of discretion. *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex.1978); *Lamar Builders, Inc. v. Guardian Sav. & Loan Ass'n*, 789 S.W.2d 373, 374 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Philipp Bros., Inc. v. Oil Country Specialists, Ltd.*, 709 S.W.2d 262, 265 (Tex.App.—Houston [1st Dist.] 1986, writ dism'd w.o.j.).[1] A trial court abuses its discretion when the facts and law permit the trial court to make only one decision, and the trial court rules to the contrary. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985); *Lamar Builders, Inc.*, 789 S.W.2d at 374.

The issue before us is whether the trial court abused its discretion in temporarily enjoining presentment of the letter of credit based on its finding that First City was bound by the fifth paragraph of the Option Agreement. First City asserts, in its first two points of error, that the trial court erred in temporarily enjoining presentment of the letter of credit because: (1) there was no pleading or proof of any basis for an injunction under TEX.BUS. & COM.CODE ANN. § 5.114(b) (Tex. UCC) (Vernon Supp. 1991); and (2) the withdrawal provision under the fifth paragraph was not incorporated into or referenced in the letter of credit.

Section 5.114 of the Texas Business and Commerce Code requires an issuing bank to honor a draft for payment against a letter of credit when the draft complies with the terms of the letter of credit, even if the goods or documents do not conform to the underlying contract between the cus-

---

1. However, some of the Court's language relating to letters of credit was disapproved of by the Texas Supreme Court when it denied writ on the appeal from the final judgment. *See Philipp Bros., Inc.*, 709 S.W.2d at 264, *on appeal from final judgment, Oil Country Specialists, Ltd. v.*

*Philipp Bros., Inc.*, 762 S.W.2d 170, 179 (Tex. App.—Houston [1st Dist.] 1988), *writ denied per curiam sub nom., Philipp Bros., Inc. v. Oil Country Specialists, Ltd.*, 787 S.W.2d 38, 40 (Tex. 1990).

tomer and the beneficiary. TEX.BUS. & COM. CODE ANN. § 5.114(a) (Tex. UCC) (Vernon 1968). There are three exceptions to this general rule: if a document, which on its face conforms to the letter of credit, is forged or fraudulent or if there is fraud in the transaction. TEX.BUS. & COM.CODE ANN. § 5.114(b) (Tex. UCC) (Vernon Supp.1991). If any of these exceptions applies, the issuing bank may still honor the draft, despite notification from its customer of the forgery or fraud, but a court may enjoin such honor. TEX.BUS. & COM.CODE ANN. § 5.114(b)(2).

■ Upon issuing a letter of credit, a bank assumes a primary obligation independent of the underlying contract and agrees that it will pay upon presentment of documents required by the letter of credit. *Philipp Bros., Inc. v. Oil Country Specialists, Ltd.*, 787 S.W.2d 38, 40 (Tex.1990). This principle is designed to protect the commercial vitality of letters of credit. *Id.* The Texas Supreme Court has held that presentment of a letter of credit may not be enjoined unless there is a showing by the customer of fraud by the beneficiary. *Philipp Bros., Inc.*, 787 S.W.2d at 40; *Lamar Builders, Inc.*, 789 S.W.2d at 374; *see also Alamo Sav. Ass'n v. Forward Constr. Corp.*, 746 S.W.2d 897, 899 (Tex.App.—Corpus Christi 1988, writ dism'd w.o.j.) (section 5.114(b) lists three exceptions to general rule that issuer's obligation to pay upon presentment is independent of underlying contract between customer and letter of credit beneficiary); *Paris Sav. & Loan Ass'n v. Walden*, 730 S.W.2d 355, 357–58 (Tex.App.—Dallas 1987, writ dism'd w.o.j.) (court may enjoin issuer from honoring letter of credit in cases set forth in section 5.114(b)); *GATX Leasing Corp. v. DBM Drilling Corp.*, 657 S.W.2d 178, 181–82 (Tex.App.—San Antonio 1983, no writ) (when conforming documents are presented, payment must be made, but court may enjoin if exceptions under section 5.114(b)(2) met).

■ GRC and Perot make no allegations of fraud or forgery. They contend that Modern World is grossly insolvent and that, given its financial condition, it is highly likely that First City will draw against the letter of credit. They further assert that First City is in financial trouble and that, if it is seized by federal regulators after the letter of credit has been drawn, they will be unsecured creditors and probably unable to collect their $2.5 million claim should they prevail in their suit. These are not legally sufficient reasons to enjoin presentation of a letter of credit.

■ Furthermore, as we noted above, irrevocable letter of credit number 99612 contains no withdrawal provision, nor does it reference or incorporate the Option Agreement. Letters of credit are governed by the construction rules of ordinary contracts. *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 115 (Tex. 1978). If an irrevocable letter of credit contains no express withdrawal provision, it cannot be withdrawn, except by agreement of all the parties. *See Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 541–42 (Tex.1987) (irrevocable letter of credit can be modified by the issuer only with the consent of the beneficiary and account party). Unless the letter of credit contains an explicit reference to an underlying contract, such as the Option Agreement, creating a condition for honoring a draft, the underlying contract does not affect liability under the letter of credit. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 381 (Tex.1985) (disputes between the account party and beneficiary concerning the underlying transaction are of no concern to issuer); *Summit Ins. Co. v. Central Nat'l Bank*, 624 S.W.2d 222, 225 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (beneficiary's noncompliance with the underlying contract does not affect issuer's liability unless a reference to the contract explicitly creates a condition for honoring a draft).

As a matter of law, the trial court should not have enjoined presentation of the letter of credit in the absence of any allegation and evidence of fraud. Nor should the trial court have enjoined presentation of the letter of credit in the absence of explicit language in the letter itself permitting the account parties, GRC and Perot, to with-

draw the letter. The trial court abused its discretion because the law only permitted it to deny the injunction.

We sustain the appellants' first and second points of error. Because of our disposition of these points, it is unnecessary for us to discuss the remaining points of error.

We reverse that portion of the trial court's order enjoining First City from transferring, assigning, modifying, presenting, or removing from its vault irrevocable letter of credit number 99612, and dissolve the temporary injunction.

In accordance with TEX.R.APP.P. 86(b), we direct the clerk to issue the mandate simultaneously with this opinion and our judgment.