COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-206-CV
 
 
 
IN 
THE INTEREST OF C.C., C.C.,
C.C., 
C.C., AND K.B., CHILDREN
 
 
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        This 
is a termination of parental rights appeal.  Following a nonjury trial in 
May 2004, the trial court terminated the parental rights of Appellant Lynetta H. 
in C.C.(1), C.C.(2), C.C.(3), C.C.(4), and K.B.[2]  
The trial court also terminated the parental rights of Appellant Marcell B. in 
K.B.  In two points, Appellants argue that 1) the evidence is factually 
insufficient to support termination of their parental rights, and 2) the trial 
court erred by denying their motion for continuance.  We will affirm.
Background 
Facts
        The 
parents of C.C.(1) born June 3, 1995, C.C.(2) born September 29, 1997, C.C.(3) 
born April 20, 1998, and C.C.(4) born April 16, 1999 are Appellant Lynetta H. 
and Richard C.[3]  Lynetta and Richard were 
married in February 1995 but separated in 1999, and the children have not had 
contact with their father since December 1999.  After separating from 
Richard, Lynetta began dating and living with Appellant Marcell B.  Marcell 
and Lynetta are the biological parents of K.B., who was born September 23, 2001.
        Several 
witnesses testified about the lengthy history of abuse and neglect suffered by 
the five children.  Lynetta testified that during her marriage to Richard 
he was physically and verbally abusive.  She stated that he used drugs and 
drank a lot and that she usually had a busted lip or black eye.  Lynetta 
also said that Richard physically assaulted her when she was pregnant with 
C.C.(1).  Lynetta testified that on one occasion Richard “accidentally 
hit” C.C.(2) when he was trying to attack her.  The police were called 
and Lynetta and Richard were both arrested.[4]  
Afterwards, the Tyler TDPRS[5]  opened a case 
regarding an allegation of possible physical abuse of the children.  
Although during her testimony Lynetta stated that Richard had only hit one of 
the children that one time, she stated on other occasions that he was abusive to 
the children and that she had to cover the children with her body to protect 
them from Richard.  When Lynetta was released from jail, she left Tyler and 
moved into a women’s shelter in Fort Worth.[6]
        During 
December 2001, the Fort Worth TDPRS division received a report alleging 
“neglectful supervision” of the five children.  Apparently, Lynetta had 
left her children unsupervised at a battered women’s shelter while she went to 
an appointment at John Peter Smith Hospital.  During the investigation, 
TDPRS received two additional reports: one on February 5, 2002 and the other one 
around February 13, 2002.  The allegations involved physical abuse and 
neglectful supervision.  However, at that time TDPRS was unable to make a 
determination regarding physical abuse because although the children did have 
injuries, the injuries were not on vital body parts; the children would not say 
how they received the injuries; and the parents admitted to disciplining the 
children but would not admit to causing the injuries.  The report regarding 
neglectful supervision involved C.C.(4) being observed outside for about twenty 
minutes in thirty-five degree weather after it had snowed, wearing only a 
diaper.  TDPRS made the decision not to remove the children at that time, 
but instead chose to implement a service plan for Lynetta and her children.
        Additionally, 
there was testimony from Tamara Buescher, an assistant principal at Remynse 
Elementary School, that during August through September 2002, C.C.(2) came to 
school on a weekly basis with some type of mark on his body.  She testified 
that she remembered one time when she observed C.C.(2)’s ear being totally 
black like “someone had grabbed it or he had been hit in the ear, but from the 
lobe to the top of his ear, it was pretty much black.”  She also stated 
that he had a cut and burn on his mouth, and that he “always had spots on his 
legs and arms on a continual basis.”
        During 
the time that TDPRS was working with the family and providing services, two more 
reports were made involving abuse of the children, one in November 2002 and the 
other in December 2002.  Allison Chaney, an investigator for TDPRS, spoke 
with some of the children regarding the December report.  She stated that 
when she met with C.C.(2) in the counselor’s office at his school, she 
observed several injuries[7] on the child, and he told 
her that his mother and Marcell had burned him with cigarettes.  He also 
told her that Marcell was hurting his mother.  In addition, Chaney 
interviewed C.C.(3) regarding the abuse. C.C.(3) told Chaney that C.C.(2) was 
burned with a lighter by Marcell because C.C.(2) was being bad. C.C.(3) also 
stated that on several occasions Marcell would lock her and her sister in the 
bathroom all night.  Furthermore, she told Chaney that Marcell would hit 
her on the bottom of her feet with a belt and also said that she had seen 
Marcell hit her mother.  Another report was made in January 2003 regarding 
physical abuse; C.C.(2) had a bruise on the inside of his ear, and C.C.(3) had a 
blackened eyelid.  Based on all of the previous reports, the children were 
removed from the home in January 2003.
        Theresa 
Martin, a TDPRS caseworker, testified that by the fall of 2003, Lynetta and 
Marcell had completed psychological evaluations, parenting classes, anger 
management classes, and counseling.  As of November 25, 2003, the children 
were court ordered back to Lynetta and Marcell.  The case was then 
transferred to Maureen Oderoh, who worked in the family reunification unit of 
TDPRS.  After the children were returned to Appellants, the children 
continued to have behavioral problems at school and suffer additional physical 
abuse by Appellants.  In February 2004, the children were removed from 
Appellants’ home for a second time.  During April 2004, Dr. Rhonda 
Polakoff met with the children regarding the abuse.  She testified that in 
her expert opinion there is a high probability that the children have been 
abused.
        Richard 
and Marcell did not appear at trial. Lynetta testified at trial and attempted to 
explain the children’s behavioral issues, but admitted that it was 
overwhelming raising five children.  After hearing all the evidence, the 
trial court terminated the parental rights of Lynetta, Marcell, and Richard on 
June 14, 2004.  On June 28, 2004, the trial court awarded temporary 
possessory conservatorship to the children’s relatives as follows: Chester M. 
received possession of K.B., Shaunette S. received possession of C.C.(1), 
Winifred B. received possession of C.C.(3), and Etta H. received possession of 
C.C.(2) and C.C.(4).  This appeal followed.
Factual 
Sufficiency
Standard of Review
        A 
parent’s rights to “the companionship, care, custody, and management” of 
his or her children are constitutional interests “far more precious than any 
property right.”  Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S. 
Ct. 1388, 1397 (1982).  “While parental rights are of constitutional 
magnitude, they are not absolute.  Just as it is imperative for courts to 
recognize the constitutional underpinnings of the parent-child relationship, it 
is also essential that emotional and physical interests of the child not be 
sacrificed merely to preserve that right.”  In re C.H., 89 S.W.3d 
17, 26 (Tex. 2002).
        In 
a termination case, the State seeks not just to limit parental rights but to end 
them permanently—to divest the parent and child of all legal rights, 
privileges, duties, and powers normally existing between them, except for the 
child’s right to inherit. Tex. Fam. Code Ann. § 161.206(b) 
(Vernon Supp. 2004-05); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).  
We strictly scrutinize termination proceedings and strictly construe involuntary 
termination statutes in favor of the parent.  Holick, 685 S.W.2d at 
20-21; In re D.T., 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. 
denied) (op. on reh’g).
        Termination 
of parental rights is a drastic remedy and is of such weight and gravity that 
due process requires the petitioner to justify termination by clear and 
convincing evidence.  Tex. Fam. Code 
Ann. §§ 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 
(Tex. 1980).  This intermediate standard falls between the preponderance 
standard of ordinary civil proceedings and the reasonable doubt standard of 
criminal proceedings.  G.M., 596 S.W.2d at 847; D.T., 34 
S.W.3d at 630.  It is defined as the “measure or degree of proof that 
will produce in the mind of the trier of fact a firm belief or conviction as to 
the truth of the allegations sought to be established.” Tex. Fam. Code Ann. § 101.007 (Vernon 
2002).
        The 
higher burden of proof in termination cases alters the appellate standard of 
factual sufficiency review.  In re C.H., 89 S.W.3d 17, 25 (Tex. 
2002).  “[A] finding that must be based on clear and convincing evidence 
cannot be viewed on appeal the same as one that may be sustained on a mere 
preponderance.”  Id.  In considering whether the evidence of 
termination rises to the level of being clear and convincing, we must determine 
“whether the evidence is such that a factfinder could reasonably form a firm 
belief or conviction” that the grounds for termination were proven.  Id.  
Our inquiry here is whether, on the entire record, a factfinder could reasonably 
form a firm conviction or belief that the parents violated one of the conduct 
provisions of section 161.001(1) and that the termination of the parents’ 
parental rights would be in the best interest of the child.  Id. at 
28.
Grounds for 
Termination of Appellant’s Parental Rights
        The 
trial court found that Appellants violated two provisions of the family code 
dealing with endangerment of a child.  See Tex. Fam. Code Ann. § 161.001(1)(D),(E).  
Both Appellants challenge the factual sufficiency of the evidence to support 
these grounds for the termination of their parental rights.
Texas Family 
Code Section 161.001(1)(E)
        Under 
section 161.001(1)(E) of the Texas Family Code, Appellants’ parental rights 
may be terminated if the trial court found by clear and convincing evidence that 
they “engaged in conduct or knowingly placed the child with persons who 
engaged in conduct which endangers the physical or emotional well-being of the 
child.” Tex. Fam. Code Ann. § 161.001(1)(E).  
Under this section, the term "endanger" means to expose to loss or 
injury, to jeopardize.  In re M.C., 917 S.W.2d 268, 269 (Tex. 1996).  
There must be evidence of endangerment to the child's physical or emotional 
well-being as the direct result of the parent's conduct.  In re R.D., 
955 S.W.2d 364, 367-68 (Tex. App.—San Antonio 1997, pet. denied).  
Subsection (E) requires a "course of conduct."  Id.  
Accordingly, when analyzing a jury’s findings pursuant to subsection (E), we 
must determine whether sufficient evidence exists that the endangerment of the 
child’s physical well-being was the direct result of the parent’s conduct, 
including acts, omissions, or failures to act.  In re D.M., 58 
S.W.3d 801, 811-12 (Tex. App.—Fort Worth 2001, no pet.).  Termination 
under section 161.001(1)(E) must be based on more than a single act or omission; 
a voluntary, deliberate, and conscious course of conduct by the parent is 
required.  Tex. Fam. Code Ann. 
§ 161.001(1)(E); D.T., 34 S.W.3d at 634; In re K.M.M., 993 S.W.2d 
225, 228 (Tex. App.—Eastland 1999, no pet.).
        Here, 
the record supports the conclusion that C.C.(1), C.C.(2), C.C.(3), C.C.(4), and 
K.B. have been physically abused while in Appellants’ care.  During Dr. 
Polakoff’s interview with the children, C.C(1) stated that her mother whips 
her with a tree branch, and C.C.(3) and (4) stated that their mother and 
stepfather had tried to drown them.  The children have also told their 
foster mother that Marcell forced their heads under the water.  The record 
also recounts numerous physical injuries of the children. For example, 1) 
C.C.(2)’s abrasion on his cheek and his entire ear turning black from being 
slapped, 2) the burns on both C.C.(2)’s and C.C.(3)’s arms, 3) C.C.(2) 
stating that his mother and Marcell burn him with cigarettes when he is bad, 4) 
C.C.(2)’s bruises to his lower back and legs, and 5) two burn marks on K.B.
        In 
addition, the record reveals many other incidents of physical abuse too numerous 
to list.  The record contains overwhelming evidence that these five 
children were subjected to severe and repeated physical abuse. Applying the 
appropriate standard of review, we hold that the evidence is such that a trier 
of fact could reasonably form a firm belief or conviction that Appellants 
knowingly engaged in conduct that endangered C.C.(1)’s, C.C.(2)’s, 
C.C.(3)’s, C.C.(4)’s, and K.B.’s physical or emotional well-being.  
Consequently, we hold that there is factually sufficient evidence to support the 
termination of Lynetta H.’s and Marcell B.’s parental rights based upon that 
ground.
        If 
multiple grounds are alleged for termination, the evidence is sufficient if it 
supports just one of the alleged conduct grounds.  In re W.J.H., 111 
S.W.3d 707, 715 (Tex. App.—Fort Worth 2003, pet. denied).  Therefore, we 
are not required to address whether the evidence is sufficient to establish 
termination under section 161.001(1)(D).
Best Interests
        Additionally, 
Appellants argue that termination of their parental rights would not be in the 
best interest of the children. In proceedings to terminate the parent-child 
relationship brought under section 161.001 of the family code, the petitioner 
must establish one or more of the acts or omissions enumerated under subdivision 
(1) of the statute and must also prove that termination is in the best interest 
of the child.  Id. § 161.001; Richardson v. Green, 677 
S.W.2d 497, 499 (Tex. 1984); Swate v. Swate, 72 S.W.3d 763, 766 (Tex. 
App.—Waco 2002, pet. denied).  Both elements must be established; 
termination may not be based solely on the best interest of the child as 
determined by the trier of fact.  Tex. Dep't of Human Servs. v. Boyd, 
727 S.W.2d 531, 533 (Tex. 1987).
        Our 
inquiry here is limited to whether, on the entire record, a factfinder could 
reasonably form a firm conviction or belief that the termination of the 
parents’ parental rights would be in the best interest of the child.  In 
re C.H., 89 S.W.3d at 28.
        Nonexclusive 
factors that the trier of fact in a termination case may use in determining the 
best interest of the child include:
 
        (1)    the 
desires of the child;
        (2)    the 
emotional and physical needs of the child now and in the future;
 
        (3)    the 
emotional and physical danger to the child now and in the future;
 
        (4)    the 
parental abilities of the individuals seeking custody;
        (5)    the 
programs available to assist these individuals to promote the best interest of 
the child;
 
        (6)    the 
plans for the child by these individuals or by the agency seeking custody;
 
        (7)    the 
stability of the home or proposed placement;
        (8)    the 
acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one; and
 
        (9)    any 
excuse for the acts or omissions of the parent.
 
Holley 
v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).  These factors are not 
exhaustive; some listed factors may be inapplicable to some cases; other factors 
not on the list may also be considered when appropriate.  In re C. H., 
89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may 
be sufficient in a particular case to support a finding that termination is in 
the best interest of the child.  Id.  On the other hand, the 
presence of scant evidence relevant to each Holley factor will not 
support such a finding.  Id.
        A 
review of the record in this case supports the conclusion that there was 
sufficient evidence to support the trial court’s findings that termination of 
Appellants’ parental rights was in the best interest of C.C.(1), C.C.(2), 
C.C.(3), C.C.(4), and K.B.  For example, although the children have some 
level of bonding with their mother, the record reveals that they seemed to be 
excited about being placed with a foster family.  Furthermore, C.C.(1) 
stated that she did not want to go back and live with her mother and Marcell.  
Lynetta testified that she had nothing to give her children other than the 
“clothes on my back.”  Additionally, the evidence showed that the 
children have severe emotional and medical needs that Appellants have neglected 
to address.  Sherry McReynolds, the court-appointed special advocate, did 
recommend against termination, but testified that she was advocating only 
supervised visits because of the risk involved.  However, she also 
testified that she did not believe the Appellants could adequately parent these 
five children.
        The 
evidence shows that Lynetta failed to comply with the service plan requirement 
that she continue counseling, and she never completed the drug assessment that 
TDPRS requested.  The evidence also shows that Marcell has not engaged in 
any services since the children were removed for a second time in February 2004.  
The repeated abuse of the children and absence of a proper parent-child 
relationship along with evidence relevant to the other Holley factors 
demonstrates that the evidence is factually sufficient to support the trial 
court’s findings that termination of Appellants’ parental rights was in the 
best interest of C.C.(1), C.C.(2), C.C.(3), C.C.(4), and K.B.  We overrule 
Appellants’ first point.
Motion for 
Continuance
        Appellants 
argue in their second point that the trial court erred by denying their motion 
for continuance.  We review a trial court's ruling on a motion for 
continuance under an abuse of discretion standard. BMC Software Belg., N.V. 
v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002).  An appellate court cannot 
substitute its judgment for the trial court’s, but must only determine whether 
the trial court’s action was so arbitrary as to exceed the bounds of 
reasonable discretion.  Philipp Bros. Inc., v. Oil Country Specialists, 
Ltd., 709 S.W.2d 262, 265 (Tex. App.—Houston [1st Dist.] 1986, writ 
dism’d).
        Here, 
Appellants jointly filed a motion for continuance on May 13, 2004.  The 
motion requested that the trial be continued in order for home studies to be 
conducted on relatives who could potentially keep the children.  Appellants 
argue that pending the results of these home studies, the children could have 
been placed with relatives prior to termination of their parental rights and 
that by denying the motion for continuance, the trial court denied Appellants of 
the right to use relative placement as a method of defending the termination 
procedure.  The State argues that the issue of conducting home studies on 
the relatives has virtually nothing to do with the termination cause of action.
        The 
family code provides that a court shall place a child removed from the child’s 
custodial parent with a noncustodial parent, or with a relative of the child if 
placement with the noncustodial parent is inappropriate, unless placement with 
the noncustodial parent or relative is not in the best interest of the child.  
Tex. Fam. Code Ann. § 262.201(e) 
(Vernon 2002).  Reasonable efforts should be made with respect to a child 
to be placed in foster care to preserve and reunify families and to give 
preference to an adult relative over a nonrelated caregiver in determining the 
placement of a child.  42 U.S.C.A. § 671(a)(15)(B), (19) (2003).  The 
trial court evaluates the efforts of the agency to identify relatives who could 
provide the child with a safe environment if the child is not returned to a 
parent.  See Tex. Fam. Code 
Ann. § 263.306(a)(6).
        Here, 
Appellants provide no authority to suggest that there is either a statutory or a 
common-law duty imposed on TDPRS to make such a placement or to investigate such 
a placement before a party’s parental rights may be terminated.  
The authority that Appellants cite in support of their argument is simply not 
applicable to the present case.[8]  During the 
hearing, TDPRS indicated that it would consider Appellants’ relatives as a 
viable option for placement of the children.  However, TDPRS’s concern 
was that further home studies needed to be completed before a decision could be 
made regarding placement of the children and that regardless of the results, it 
would still seek termination of Appellants’ parental rights.
        The 
determination of where a child will be placed is a factor in evaluating the 
child’s best interest, but it is not a bar to termination that placement plans 
are not final or that placement will be with nonrelatives.  See In re 
C.H., 89 S.W.3d at 28.  Accordingly, we hold that the trial court did 
not abuse its discretion by denying Appellants’ motion for continuance.  
Appellants’ second point is overruled.
Conclusion
        Having 
overruled Appellants’ two points, we affirm the trial court’s judgment.
  
 
                                                                  PER 
CURIAM
 
 
 
PANEL 
A: CAYCE, C.J.; HOLMAN, J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).
 
DELIVERED: 
May 26, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
To protect the privacy of the parties involved in this appeal, we identify the 
children by initials only and Appellants by first name and last initial only. See 
Tex. Fam. Code Ann. § 109.002(d) 
(Vernon 2002). We also include numerical references of the children with 
identical initials from oldest to youngest, for clarity purposes.
3.  
The rights of Richard C. in all of the children subject to this appeal were also 
terminated. However, no appeal was filed.
4.  
Lynetta was arrested on an old warrant for assaulting Richard.
5.  
The name of the agency has changed to the Texas Department of Family and 
Protective Services effective September 1, 2003. See Act of June 2, 2003, 
78th Leg., R.S., ch. 198, §§ 1.01(b)(4)(J), 1.27, 2003 Tex. Gen. Laws 611, 
641, 729. However, because the pleadings and judgment in the trial court refer 
to the Texas Department of Protective and Regulatory Services, for the sake of 
consistency will do likewise in this opinion.
6.  
However, the record reveals that Lynetta told Sherry McReynolds, a child 
advocate volunteer, that she, Marcell, and the children moved in with her mother 
when they moved to Fort Worth.
7.  
Chaney testified that C.C.(2) had a mark on his chin and lip and his ear was red 
and swollen and looked like there was a dime-sized knot on the top of it.
8.  
Appellants cite to a case involving a default divorce decree.  See Jones 
v. Jones, 64 S.W.3d 206, 210-11 (Tex. App.—El Paso 2001, no pet.) (listing 
balancing factors the trial court should use in determining whether to permit an 
incarcerated person to appear at trial), disapproved in part on other grounds 
by, In re Z.L.T., 124 S.W.3d 163 (Tex. 2003).