Paul CLARKE, Relator,

v.

The Honorable Carolyn L. RUFFINO, Judge of the 361st District Court of Brazos County, Texas, Respondent.

No. B14–91–00674–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 27, 1991.

Bill Payne, Bryan, for relator.

W. Stephen Rodgers, Bryan, for respondent.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This mandamus concerns an order by Judge Carolyn L. Ruffino granting a motion to disqualify the law firm of Thornton, Payne, Watson & Kling, P.C. from representing Paul Clarke in a suit filed against Alfred Lehtonen in the 361st District Court of Brazos County, Texas. Relator complains in one point of error that the trial court clearly abused its discretion in disqualifying the law firm which was representing him, because their representation did not violate the Texas Disciplinary Rules of Professional Conduct. TEX.GOV'T CODE ANN. § Title 2, Subtitle G–Appendix (Vernon Supp.1991) (effective January 1, 1990). We disagree. Writ denied.

On June 2, 1988, Paul Clarke filed suit against Alfred Lehtonen for constructive trust and fraud. Mr. Clarke's suit was filed by Larry A. Catlin of Youngkin, Catlin, Bryan & Stacy. Mr. Clarke alleged Mr. Lehtonen breached an alleged joint venture agreement pertaining to the purchase of apartment property located in College Station, Texas ("the property"). He asserted that Mr. Lehtonen breached his promise to pay five percent equity interest in the property as well as a five percent net equity interest in the cash flow from the property upon successfully purchasing the property.

In March of 1990 while Mr. Clarke's suit was still pending, Mr. Lehtonen sought refinancing of the property. Mr. Jay Watson of the firm of Thornton, Payne, Watson & Kling, P.C. performed the legal services in connection with the refinancing. A year later, approximately May 1991, relator, Paul Clarke, hired Mr. Bill Payne of the same firm, Thornton, Payne, Watson & Kling, P.C., to assume representation in his suit against Mr. Lehtonen. On May 31, 1991, Mr. Payne requested Mr. Lehtonen's attorney to provide him with certain items of discovery in relation to the suit, includ-

ing information regarding the refinancing of the apartment complex.

Shortly thereafter, Mr. Lehtonen's attorney filed a motion to disqualify Mr. Payne because Mr. Watson of his same firm had represented Mr. Lehtonen in the refinancing of the apartment complex. On June 21, 1991, an oral hearing was held before the Honorable Carolyn L. Ruffino. Mr. Watson testified and the court admitted into evidence his statement for legal services to Mr. Lehtonen as well as a copy of a check from Mr. Lehtonen in payment. Mr. Watson's file on the legal work done on behalf of Mr. Lehtonen was admitted into evidence for the purpose of an in-camera inspection only. Upon hearing the evidence and arguments and upon further in camera review of Mr. Watson's file, the court granted the motion to disqualify on July 11, 1991 and relator filed his petition for writ of mandamus on July 30, 1991.

In exercising mandamus review, an appellate court has authority only to "correct a clear abuse of discretion or the violation of a ministerial duty imposed by law when there is no other adequate remedy at law". *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (citing *State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984)); *Central Freight Line, Inc. v. White*, 731 S.W.2d 121, 122 (Tex. App.—Houston [14th Dist.] 1987, orig. proceeding). A trial court abuses its discretion "when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson, supra*, at 917. The fact that a trial judge exercised its discretionary authority in a manner different than an appellate judge might in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex.1985) (citing *Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290, 295 (1959)). The relator has the heavy burden of establishing that "the facts and law permit the trial court to make but one decision." *Johnson, supra*, at 917. Our question in the present case,

therefore, is whether based on the present disciplinary rules of professional conduct and the facts of this case, the trial judge had only one choice, that is, to deny the motion for disqualification.

Before determining this question, we first observe that at no time in relator's brief does he cite or mention the Texas Disciplinary Rules of Professional Responsibility that became effective January 1, 1990. He cites to Texas Jurisprudence and to cases which interpreted the canons and ethics of the former Texas Code of Professional Responsibility. Apparently, relator assumes that there is no difference between the old rules and new rules now in effect. We disagree. The new rules, specifically 1.05, 1.06 and 1.09, govern the disposition of this case and we are, therefore, required to interpret them, as the trial judge below was required to, in the facts of this case. *See* Texas Disciplinary Rules of Professional Conduct 1.05, 1.06 and 1.09, TEX.GOV'T CODE ANN. Title 2, Subtitle G, App., Art. 10, § 9 (Vernon Supp.1991).

Relator first contends there was no clear attorney-client relationship. Relator points to the fact that Lehtonen never asked Watson to represent him; all contact was with the bank. Lehtonen never visited with Watson except on the day he signed the refinancing documents. On the other hand, Mr. Watson clearly admits he billed Mr. Lehtonen for his legal services performed in connection with the refinancing of the property and was paid by Mr. Lehtonen. Although there is no disciplinary rule that expressly describes when an attorney-client relationship exists, the Preamble discusses the various functions an attorney might perform in representing clients. Preamble: A Lawyers Responsibilities, TEX.GOV'T CODE ANN. Title 2, Subtitle G, Appendix, Article 10 § 9 (Vernon Supp. 1991). One of these functions includes evaluating a client's affairs and reporting about them to the client or to others. *Id.* Clearly, that is part of the function Watson served on behalf of Lehtonen and the bank. Even if this was merely an accommodation or a pro forma relationship, the disciplinary rules do not permit a mere pro forma rep-

resentation of a client. *Insurance Company of North America v. Westergren*, 794 S.W.2d 812, 815 (Tex.App.—Corpus Christi 1990, mandamus overruled). We, therefore, conclude that an attorney-client relationship did exist between Watson and Lehtonen.

■ The main contention in relator's brief is that Mr. Lehtonen gave Watson's law firm no confidential information that should preclude his law firm from later representing a party adverse to Mr. Lehtonen's interest in the property now involved in litigation. Relator bases his argument on the premise that in order to have a violation of the attorney-client relationship, there must be proof that Mr. Watson was given "secrets" or "confidences" by Mr. Lehtonen which would be substantially related to the present suit. Relator does not refer to the rule number in the Rules of Professional Responsibility in stating this legal proposition, but does cite Corpus Juris Secundum and case law interpreting the former rules of professional responsibility.

The former rules of professional responsibility defined "confidences" differently than do the present rules. The former rule defined confidence as "information protected by the attorney-client privilege"; and secrets as "information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." Texas Code of Professional Responsibility, TEX.GOV'T CODE ANN. Title 2, Subtitle G, Appendix, Article 10 § 9 (Vernon 1988), DR 4–101(A). The present Texas Disciplinary Rules of Professional Conduct define confidential information to include both "privileged and unprivileged information." Texas Disciplinary Rules of Professional Conduct, *supra*, Rule 1.05. "Unprivileged client information" is defined as "all information *relating to a client* or furnished by the client ... during the course of or *by reason of the representation of the client." Id.* (emphasis added). We find that this new definition of confidential information certainly expands on the former definition. Under this new definition, Watson did have confidential information. He had information *relating to Lehtonen by reason of his representation of Lehtonen* in the refinancing of the property.

Further, we find that the substantial relationship test cited in relator's brief is not the only basis which now governs a trial court's determination as to whether an attorney should be disqualified. Rule 1.09 states:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(1) if it is the same or a substantially related matter;

(2) in which such other person questions the validity of the lawyer's services or work product for the former client; *or*

(3) if the representation in reasonable probability will involve a violation of Rule 1.05 [defines confidentiality of information]

(b) Except to the extent authorized by Rule 1.10 [exception for successive government and private employment], when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a). (emphasis added)

Texas Disciplinary Rules of Professional Conduct, *supra*, Rule 109 (emphasis added). Because of the "or" strategically placed in this rule, there are now more than one bases for disqualification of an attorney. *See id*, comment 3 to Rule 1.09 ( "latter representation is improper if any of three circumstances exist, except with prior consent" ). Not only should an attorney be disqualified if he is working on the same or substantially related matter, but he should not represent a client if the representation may in reasonable probability involve a violation of the new rules governing confidentiality of information. *Id.* at Rule 1.09(a)(3). As stated above under the new definition, Watson did hold information confidential under the new rules, and there-

fore, his representation violates Rule 1.09(a)(3) without consent from his former client. It, therefore, was not an abuse of discretion for the trial judge to make this determination.

■ Nevertheless, the trial judge below explained to both attorneys by letter that she determined that both matters were substantially related. Under the former rules, the movant was required to establish the existence of a prior attorney-client relationship in which "the factual matters involved were so related to the facts in the pending litigation that it creates a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary". *NCNB Texas National Bank v. Coker*, 765 S.W.2d 398, 400 (Tex.1989). It is not clear how the test should be applied now. *See* comment 9 to Rule 1.09 ("[w]hether the 'substantial relationship' test will continue to be employed as a standard for procedural disqualification is a matter beyond the scope of these Rules."). However, we note that comment 10 to the new rule 1.09 states that this rule is primarily for the protection of clients. We also note, as stated above, that the new rules are much more expansive in defining what is confidential. In light of this, the two representations do appear substantially related.

■ In March of 1990 while relator's suit was still pending, Lehtonen sought refinancing of the property. Watson performed the legal services in connection with the refinancing and then a year later relator hired Watson's firm to assume representation in his suit against Lehtonen. Shortly thereafter, Payne of Watson's firm made a discovery request to Lehtonen's attorney requesting information regarding the refinancing of the apartment complex. Such information was necessary, in relator's suit to establish title to a part of the ownership of that same project. The trial judge reviewed Watson's refinancing file by in-camera inspection and concluded:

> that there is a substantial relationship between the representations because of the factual subject matter involved. Specifically, the substantial relationship re-

volves around documents which would help to identify the status of and quantify the continued existence and extent of the legal and equitable title to the apartment complex—ie. UCC assignments of security interests, copy of Mortgagee title policy and endorsement, Business Affidavit, appraisal and survey information. Furthermore, it involves refinancing documents—ie. transfer of liens, modification, rearrangement and Extension Agreements and Deed of Trust with Agreement for assignment of rents.

> The use of such information contains confidential information, all of which is not necessarily of public record, substantially related to both representations—ie. ownership interests and liabilities attached to the apartment complex and the value as it relates to this ownership interest.

Although it is true that both matters are not the same, information required for the present suit could be acquired from Watson's prior representation. Once a movant shows a substantial relationship exists, he is entitled to a conclusive irrebuttable presumption that confidences and secrets were imparted to the former attorney. *Insurance Co. of North America v. Westergren*, 794 S.W.2d 812, 815 (Tex.App.—Corpus Christi 1990, mandamus overruled) (citing *Coker, supra,* at 400). It, therefore, was not a clear abuse of discretion for the trial court to find that the two matters were substantially related and to disqualify the law firm of Thornton, Payne, Watson & Kling, P.C.

Based on the present Texas Disciplinary Rules of Professional Conduct and their application to the facts of this case, we do not find that the trial judge's only choice as a matter of law was to deny the motion for disqualification. A mandamus, therefore, cannot issue. Relator's petition for writ of mandamus is denied.