**Suzanne DAVIS, Relator,**

v.

**The Honorable Thomas O. STANSBURY, Judge of the 328th District Court of Fort Bend County, Texas, Respondent.**

**No. 01–91–01072–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 23, 1992.

Logene Foster, Sugarland, for relator.

Neal Kalinowski, Rosenberg, for respondent.

Before WILSON, DUGGAN and MIRABAL, JJ.

## OPINION

WILSON, Justice.

Relator, Suzanne Davis, (Wife) is party to a divorce proceeding in respondent's court. This request for relief by way of mandamus stems from respondent's order disqualifying Wife's attorney, Logene Foster (Foster), in the divorce proceeding. Respondent based the order of disqualification on his finding that Wife's spouse, Fred Thomas Davis, Jr. (Husband), received legal counsel from Foster's partner, Mike Orsak. Wife asks this Court to order respondent to vacate his order to the extent that it disqualifies Foster from representing her in the pending divorce. We grant the relief requested.

### Summary of the Facts

Wife submitted the statement of facts from a lengthy hearing on the motion to disqualify. Respondent heard testimony from Foster, Husband, and Orsak. The pertinent information from the hearing and from exhibits submitted with Wife's petition is as follows:

1) The parties separated in 1986.

2) Wife hired Foster in December 1986, to sue for divorce and child custody.

3) Husband hired Neal Kalinowski to represent him in the 1986 divorce case.

4) The couple reconciled in June 1987, while the divorce case was in the discovery phase.

5) At some point, Husband became acquainted with Orsak at Little League.

6) In the spring of 1991, the couple again separated.

7) Fred, seeking legal advice from Orsak, Foster's partner, "dropped in" on Orsak without an appointment. (first meeting)

8) Fred knew, entering first meeting, that Foster and Orsak were partners, and that Foster represented Wife in the 1986 proceeding.

9) The content of the first meeting was more social than business, and it lasted about 30 minutes. Husband did not communicate his knowledge of the prior representation of Wife by Foster.

10) Two weeks later, Husband had a second meeting with Orsak. (second meeting)

11) At the second meeting with Husband, Orsak began to take information necessary for representation. Husband testified that everything discussed with Orsak at second meeting had been previously discussed with Wife, or with other family members.[1] Husband hired Orsak to represent him in the divorce, and gave Orsak a check.

12) Orsak gave the check to the firm's receptionist, Hazel, who recognized Husband's name on the check. Hazel informed Orsak that Foster represented Wife in 1986 divorce.

13) Husband was then informed by either Hazel or Orsak that Orsak could not represent him, based on Foster's prior representation of Wife. Husband was instructed to come and pick up his check, which had not been deposited.

14) Husband hired Neal Kalinowski, the same lawyer he retained in 1986, to represent him in the contemplated divorce action. Husband filed his original petition for divorce in the present cause of action on May 15, 1991.

15) Foster filed a cross-petition for divorce on behalf of Wife on May 20, 1991.

16) Husband waited three months, until August 28, 1991, after discovery commenced in the case, to file a motion to disqualify Foster as Wife's attorney.

17) In Husband's testimony, he claimed Orsak knew of the prior representation, and that Orsak said it would be "OK" for him to represent Husband in the present suit, because this was a new matter and "it was first come, first served." Later in his testimony, Husband said he had not told Orsak of the prior representation, that he just "assumed he [Orsak] knew." Orsak testified that he did not know of the prior representation.

Judge Stansbury found that much of the testimony was contradictory. He based his order disqualifying Foster from representing Wife on the following findings:

1. Logene L. Foster of the law firm of Foster, Pope & Orsak represented Suzanne Davis, Respondent herein, in a divorce action against Fred Thomas Davis, Jr., Petitioner herein, during the latter part of 1986, and first part of 1987, in the 328th Judicial District Court of Fort Bend County, Texas, in cause No. 56,056.

2. Neal Kalinowski represented Fred Thomas, Jr., in the cause referenced above in finding number 1.

3. In 1987, Suzanne Davis and Fred Thomas Davis, Jr. reconciled.

4. In 1988, this Court dismissed the cause referenced above in finding number 1 for want of prosecution.

5. On or about April 19, 1991, Fred Thomas Davis, Jr. consulted with and hired Mike Orsak of the firm of Foster, Pope & Orsak to represent him in a divorce action against Suzanne Davis.

6. Mike Orsak knew or should have known that his partner, Logene L. Foster, had previously represented Suzanne Davis in a divorce action against Fred Thomas Davis, Jr. in 1986 and 1987.

7. Subsequent to April 19, 1991, Mike Orsak advised Fred Thomas Davis, Jr. that he could not represent him in a divorce action against Suzanne Davis because of the conflict of interest within the firm of Foster, Pope & Orsak because of Logene L. Foster's prior representation of Suzanne Davis in the 1986 and 1987 divorce action.

---

1. In the hearing, Husband's lawyer objected successfully to questions requesting specifics of the information communicated to Orsak in the second meeting.

8. It is a conflict of interest for Logene L. Foster or any member of the firm of Foster, Pope & Orsak to represent Suzanne Davis or Fred Thomas Davis, Jr. in a divorce action against the other.

9. Fred Thomas Davis, Jr. did not waive his right to assert his claim of conflict of interest that exists against Logene L. Foster or any member of the firm of Foster, Pope & Orsak in representing Suzanne Davis in a divorce action against Fred Thomas Davis, Jr.

10. That the name partners of the law firm of Foster, Pope & Orsak at all times relevant hereto are Logene L. Foster, Ronald R. Pope and Michael E. Orsak.

## Standard of Review

■ Mandamus is an extraordinary writ that issues to correct a clear abuse of discretion when there is no other adequate remedy at law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* at 917. The court may not act in an arbitrary or unreasonable fashion that is without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Lamar Builders, Inc. v. Guardian Sav. & Loan Ass'n*, 789 S.W.2d 373, 374 (Tex. App.—Houston [1st Dist.] 1990, no writ). This Court must examine the action of the trial court in disqualifying Foster from representing Wife by interpreting Texas Disciplinary Rules of Professional Conduct 1.09, 1.05, and 1.06. SUPREME COURT OF TEXAS, STATE BAR RULES art. X, § 9 (Texas Disciplinary Rules of Professional Conduct) Rules 1.05, 1.06, 1.09 (1992) [hereinafter TEX. DISCIPLINARY RULES OF PROF. CONDUCT] (located in the pocket part for Volume 3 of the Texas Government Code in title 2, subtitle G app., following § 83.006 of the Government Code). Rule 1.09 pertains to a conflict of interest that involves a former client; rule 1.05 discusses confidentiality of information; and rule 1.06 is the general rule regarding conflict of interest.

## Conflict of Interest: Former Client

Texas Disciplinary Rule of Professional Conduct 1.09 addresses the present situation. This rule sets forth a strong policy statement that favors a former client's right to receive legal assistance from an attorney with whom the client had a previous attorney-client relationship. The rule provides:

(a) *Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:*

*(1) if it is the same or a substantially related matter:*

(2) in which such other person questions the validity of the lawyer's services or work product for the former client; or

(3) if the representation in reasonable probability will involve a violation of Rule 1.05.

(b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

TEX. DISCIPLINARY RULES OF PROF. CONDUCT, Rule 1.09 (1992) (emphasis added). Applying rule 1.09 to the evidence adduced at the hearing, we find that Wife was a former client of Foster, and the second divorce proceeding was substantially related to the first proceeding.

■ Comment 10 to the rule states that the rule is primarily for the protection of clients and that its protections may be waived by them. TEX. DISCIPLINARY RULES OF PROF. CONDUCT, Rule 1.09 comment 10 (1992). A waiver is effective only if the former client consents after disclosure of the relevant circumstances. *Id.* We hold, as a matter of law, under rule 1.09, that Foster and Wife had a attorney-client relationship that preceded Orsak's meeting with Husband and that the second divorce proceeding was substantially related to the first proceeding. Thus, Orsak was prohib-

ited under rule 1.09(a)(1) from undertaking representation of Husband under any circumstances other than with relator's consent. Because relator executed no waiver of representation, we must next consider what matters transpired between Orsak and Husband, in light of rule 1.05, and whether information imparted during the Orsak–Husband meetings ultimately created a conflict of interest that offended rule 1.06.

### Confidentiality of Information

Rule 1.05 states that " 'Confidential information' includes both 'privileged information' and 'unprivileged client information.' " TEX. DISCIPLINARY RULES OF PROF. CONDUCT 1.05(a). *See also Clarke v. Ruffino*, 819 S.W.2d 947 (Tex.App.—Houston [14th Dist.], 1991, orig. proceeding) (not yet reported).[2] "Privileged information" encompasses confidential communications, as defined in Texas Rule of Civil Evidence 503. TEX. DISCIPLINARY RULES OF PROF. CONDUCT, RULE 1.05(a). "Unprivileged client information" is "all information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client." *Id.*

Rule 503 provides that "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client...." TEX.R.CIV.EVID. 503(b). The rule expressly states that "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." *Id.* at 503(a).

At the hearing on the motion for disqualification, Husband testified that his discussions with Orsak concerned matters that he previously discussed with Wife or with other family members. Thus, communications between Husband and Orsak may be categorized as "unprivileged information," not "privileged information," as defined in rule 1.05. Though the rule subsumes "unprivileged information" into the category of "confidential information," a lawyer is allowed to reveal unprivileged client information "when the lawyer has reason to believe it is necessary to do so in order to respond to allegations in any proceeding concerning the lawyer's representation of the client...." TEX. DISCIPLINARY RULES OF

**2.** We believe the *Clarke* case is distinguishable from the case now before this Court. The present cause of action does not involve issues about whether an attorney-client relationship was established between Orsak and Husband or whether the matters for which the parties sought counsel are substantially related. *See Arkla Energy Resources v. Jones*, 762 S.W.2d 694 (Tex.App.—Texarkana 1988, orig. proceeding) (party seeking to disqualify attorney must show prior attorney-client relationship and must establish that matters are substantially related to those involved in former representation). In *Clarke*, the court analyzed a situation that involved disqualification of *an opponent of a former client*. We are deciding whether a *former* client is entitled to be represented by her counsel from the previous proceeding, whereas in *Clarke*, the attorney was disqualified from representation of a *subsequent* client, based on confidential information obtained from the prior client. Further, the *Clarke* case established that, under rule 1.09, a court may base an order of disqualification on a finding that "the representation in reasonable probability will involve a

violation of Rule 1.05." *Clarke*, at 950–51, TEX. DISCIPLINARY RULES OF PROF. CONDUCT, Rule 1.09(a)(3).

The Fourteenth Court of Appeals concluded that Judge Ruffino did not abuse her discretion in disqualifying an attorney from representing an adversary of a former client on her finding that confidential information imparted by the former client involved matters that were substantially related. Judge Ruffino reviewed the attorney's file on the legal work done on behalf of the subsequent client and heard testimony at a hearing on the motion for disqualification. Without consent from the former client, Judge Ruffino held that the subsequent representation violated rule 1.09(a).

The *Clarke* opinion fails to distinguish between "privileged" and "unprivileged" information or to address the issue of waiver of privileged information, as the present opinion does. Further, the Clarke opinion does not analyze rule 1.05(d)(2)(iii), which allows a lawyer to reveal unprivileged client information in order to "respond to allegations in any proceeding concerning the lawyer's representation of the client...."

PROF. CONDUCT, Rule 1.05(b), (d)(2)(iii) (1992).

■ Though Judge Stansbury was initially correct in sustaining objections based on attorney-client privilege that were lodged by Husband's present attorney, once Foster established that the information was unprivileged client information, Wife was entitled to hear testimony about the information Husband furnished Orsak. Instead, respondent based his disqualification order on a finding that merely speculated about what transpired between Orsak and Husband. Respondent's determination was made without requisite information necessary to make a reasoned determination about whether an actual conflict of interest occurred.

### Conflict of Interest: General Rule

The general rule regarding conflict of interest is rule 1.06. TEX. DISCIPLINARY RULES OF PROF. CONDUCT, Rule 1.06 (1992). Rule 1.06 states:

(a) A lawyer shall not represent opposing parties to the same litigation.

(b) In other situations and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:

(1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or

(2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.

The rule provides that an attorney may represent a client under circumstances that would be a conflict of interest, as follows:

(c) A lawyer may represent a client in the circumstances described in (b) if:

(1) the lawyer reasonably believes the representation of each client will not be materially affected; and

(2) *each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.*

(Emphasis added.) Though Wife claims that Husband waived any conflict of interest by his admission that he knew that Foster represented Wife in the prior divorce proceeding and that he knew that Foster and Orsak were partners, we do not find that Husband was given the requisite information necessary for knowledgeable consent under rule 1.06(c)(2).

We next consider section (e), which addresses what a lawyer must do when a conflict arises after representation has been assumed. The express language of the rule addresses the present situation, as follows: "If a lawyer has accepted representation in violation of this Rule ... the lawyer shall promptly withdraw from one or more representations to the extent necessary for any remaining representation not to be in violation of these Rules." TEX. DISCIPLINARY RULES OF PROF. CONDUCT, Rule 1.06(e) (1992). Further, comment 1 stresses that "Loyalty is an essential element in the lawyer's relationship to a client" and provides: "If such a conflict arises after representation has been undertaken, the lawyer must take effective action *to eliminate the conflict,* including withdrawal if necessary to rectify the situation...." *Id.,* Rule 1.06 comment 1 (emphasis added). Thus, the rule contemplates that a lawyer may withdraw from representation and that this action could "eliminate the conflict."

### Conclusion

■ The question for this Court to determine is whether respondent clearly abused his discretion in disqualifying Foster from representing Wife, a former client, based on Orsak's limited representation of the Husband, in which unprivileged client information was the substance of communications between Fred and Orsak. We note that Orsak fully complied with rule 1.06(e), in that he promptly withdrew from representation of Husband, once the conflict was brought to his attention. Husband, however, delayed filing a motion for disqualifi-

cation until two months after the present cause of action was filed by his attorney.

We hold that respondent's order was an abuse of discretion, as that phrase is legally understood, to the extent that it disqualified Foster from representing a former client, without reference to the principles articulated in the Texas Disciplinary Rules of Professional Conduct. Orsak had limited contact with Husband, who admittedly imparted no privileged information, and Orsak withdrew immediately when the prior representation was discovered. Respondent had a number of alternatives available to obtain information from the witnesses at the hearing, in order to base his ruling on more than mere speculation and conjecture. He could have overruled objections based on attorney-client privilege when, in fact, the privilege had been waived, and could have compelled Husband to answer questions about unprivileged client information. In the alternative, respondent was free to hold an in-camera hearing in chambers, outside the presence of Wife and Foster, in which Husband would be required to answer questions about unprivileged client information that passed between Orsak and Husband. Respondent could have conducted an in-camera inspection of Orsak's file, if the documents were available.

Based on the facts presented by the proceeding now before this Court, we grant leave to file the petition for writ of mandamus, conditionally grant the writ of mandamus, and order respondent to rescind his order of disqualification, to the extent that it disqualifies Logene Foster from representing Suzanne Davis. We are confident that Judge Stansbury will comply with the order of this Court. The writ of mandamus will issue only if he fails to do so.

MIRABAL, J., dissenting.

MIRABAL, Justice, dissenting.

I respectfully dissent.

The majority seems to give no weight to the trial court's express findings that:

5. Fred Davis hired Orsak to represent him in a divorce action against Suzanne Davis.

9. Fred Davis did not waive his right to assert his claim of conflict of interest that prevents Orsak's firm from representing Suzanne Davis in a divorce action against Fred Davis.

In my opinion, the outcome of this case is governed by SUPREME COURT OF TEXAS, STATE BAR RULES art. X, § 9 (Texas Disciplinary Rules of Professional Conduct) Rule 1.09(a), (b) (1992), and the cases construing rule 1.09 and its predecessor rules.[1] Suzanne Davis (the wife) does not question the validity of the finding that Fred Davis (the husband) actually hired Orsak to represent him in his divorce action against the wife.

Rule 1.09(a) and (b) provides:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

   *(1) if it is the same or a substantially related matter;*

   (2) in which such other person questions the validity of the lawyer's services or work product for the former client; or

   (3) if the representation in reasonable probability will involve a violation of Rule 1.05.

(b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

TEX. DISCIPLINARY RULES OF PROF. CONDUCT, Rule 1.09(a) and (b) (1992) (emphasis added). Comment 3 to the rule states in part:

Although paragraph (a) does not absolutely prohibit a lawyer from representing a client against a former client, it does provide that the latter representation is improper *if any* of the three cir-

---

1. The majority discusses rule 1.09 only as it relates to relator, the wife, as the "former client"; the majority does not recognize that

Fred Davis is *also* a "former client." In my opinion, the majority's reliance on rules 1.05 and 1.06 is misplaced.

cumstances exist, except with prior consent. The first prohibition is against representation adverse to a former client if it is the same or a substantially related matter.

The majority opinion concludes that, as a matter of law, the second divorce proceeding was *substantially related* to the first proceeding. Likewise, in my opinion, there can be no question that the firm's representation of the husband with regard to the second divorce proceeding, and the firm's representation of the wife in connection with the *same second divorce proceeding,* constituted representation of both parties in *the same or substantially related matter.*

Once the party moving for disqualification of an attorney under rule 1.09 proves a prior attorney-client relationship, and clearly establishes that the matters involved in the pending suit are substantially related to the matters involved in the former representation, the moving party is entitled to a *conclusive* and *irrebuttable* presumption that he imparted confidences and secrets to the former attorney. *Clark v. Ruffino,* 819 S.W.2d 947 (Tex.App.—Houston [14th Dist.] 1991, orig. proceeding) (not yet reported); *Insurance Co. of North America v. Westergren,* 794 S.W.2d 812, 815 (Tex. App.—Corpus Christi 1990, orig. proceeding); *Howard v. Texas Dept. of Human Services,* 791 S.W.2d 313, 315 (Tex.App.—Corpus Christi 1990, no writ). *See also Arkla Energy Resources v. Jones,* 762 S.W.2d 694, 695 (Tex.App.—Texarkana 1988, orig. proceeding). In such a case, the moving party will also have established, as a matter of law, that an appearance of impropriety exists and, although the former attorney will not be presumed to have imparted the confidences to his present client, the trial court should, in its proper function as internal regulator of the legal profession, disqualify counsel from any further representation in the pending suit. *NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989); *Howard,* 791 S.W.2d at 315.

In my opinion, the trial court did not abuse its discretion in the present case. I would deny leave to file the petition for writ of mandamus.

