SYNTEK FINANCE CORPORATION,
Appellant,

v.

METROPOLITAN LIFE INSURANCE
CO., Methotels, Inc., Doubletree, Inc.,
Fred Arnholt, and Steven T. Cates, Appellees.

No. 05–92–01015–CV.

Court of Appeals of Texas,
Dallas.

Jan. 27, 1994.

Rehearing Denied April 5, 1994.

Judgment reversed, —— S.W.2d ——.

William A. Brewer, III, John W. Bickel, II, James S. Renard, Dallas, for appellant.

Richard L. Nelson, Cynthia Hollingsworth, George Walter Bramblett, Jr., Dallas, for appellees.

Before THOMAS, CHAPMAN and WHITTINGTON, JJ.

## OPINION

THOMAS, Justice.

In this suit arising out of the purchase of a hotel, Syntek Finance Corporation (Syntek) appeals from an adverse jury verdict. Syntek asserts five points of error, generally complaining that the trial court erred in (a) denying certain discovery requests; (b) excluding and admitting evidence; (c) denying an attorney-disqualification motion; and (d) awarding damages. We conclude that the trial court abused its discretion in denying Syntek's attorney-disqualification motion.

We, therefore, sustain the fourth point of error. Accordingly, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

In 1986, the law firm of Hughes & Luce represented Gene Phillips in an uncontested divorce. Phillips owned a controlling interest in Syntek; he also owned interests in Southmark Corporation as well as other corporations and partnerships. During the divorce representation, Hughes & Luce was informed about Phillips's general financial situation. The information provided during the divorce representation primarily focused upon details necessary for identifying and analyzing Phillips's property interests for the purpose of structuring a property division. The law firm was concerned with what Phillips owned and the source and nature of his income.

Later in 1986, Hughes & Luce represented Phillips in assessing whether to enter into a premarital agreement. Hughes & Luce was provided with more extensive knowledge of Phillips's financial situation during this second representation. Hughes & Luce also counseled Phillips on how to preserve the character of his separate property.

Syntek acquired the Holiday Inn Crowne Plaza Hotel from Centre Plaza Hotel Company in 1986. The hotel was encumbered by a deed of trust that secured a $15,300,000 promissory note. Appellee, Metropolitan Life Insurance Company (MetLife) had been assigned the deed of trust and the note. Syntek assumed all obligations owed MetLife under the loan. Syntek ceased making monthly payments to MetLife in January 1989.

In April 1989, Syntek filed the present lawsuit. In its fifth amended petition,[1] Syntek alleged that appellees[2] induced it into purchasing the hotel by falsely promising to restructure the hotel loan. Syntek alleged that appellees secretly planned to force it to default on the note by refusing to restructure the loan. The inducement and refusal to modify the loan were alleged to be part of a scheme by appellees to improperly take over financially troubled luxury hotels.

At the time Syntek filed its lawsuit, MetLife was a client of Hughes & Luce partner Richard Nelson. Nelson investigated within the law firm to determine whether representing MetLife in the present case involved a conflict of interest. In response to Nelson's investigation, Stephen Good, a Hughes & Luce attorney, sent Nelson a note that stated: "We previously represented Gene Phillips in a divorce proceeding. In that context, we were privy to a wide variety of information concerning his financial status." Nelson consulted with Good and Darrell Jordan, who each were involved in Hughes & Luce's previous representation of Phillips. Nelson and Jordan decided that no conflict of interest existed. Consequently, Hughes & Luce represented MetLife in the matter.

In May and June 1990, Hughes & Luce discovered information that it believed implicated Phillips and Southmark Corporation in the hotel loan default. The new information indicated that Southmark Corporation had a direct interest in the hotel and that Phillips had ordered payments stopped. Nelson decided to reconsider the conflict-of-interest issue before possibly amending the pleadings to reflect the newly discovered information. In early July 1990, Nelson requested that Phillips's divorce file be delivered to him. On September 21, 1990, Nelson reviewed the file to determine if a substantial relationship

---

1. Although Syntek later filed a sixth amended petition, the fifth amended petition was Syntek's live pleading at the time the disqualification issues were litigated. The fifth amended petition alleged (i) conspiracy and combination in restraint of trade; (ii) monopolization, conspiracy to monopolize, and attempt to monopolize; (iii) unlawful acquisition; (iv) fraud "and/or" negligent misrepresentation; (v) breach of confidential relationship; (vi) civil conspiracy; (vii) breach of the duty of good faith and fair dealing;

(viii) tortious interference; and (ix) unfair competition. Syntek also sought declaratory judgment that the hotel loan was not in default and that Syntek was legally excused from any liability under the loan.

2. MetHotels, Inc. and Doubletree, Inc. are owned by MetLife. Fred Arnholt and Steven T. Cates are MetLife employees.

existed between the former representation and the present case. Nelson concluded that no conflict of interest existed.

On January 25, 1991, appellees amended their pleadings to include allegations that the debt was not paid as the direct result of Phillips's financial misconduct. The pleading alleged:

During the 1980s, Phillips and [William] Friedman built a colossal real estate and financial empire, the crown jewel of which was Southmark Corporation ("Southmark"). Phillips and Friedman were chairman and vice chairman, respectively of Southmark, which had hundreds of affiliates, including Pratt Hotel Corporation ("Pratt"), the management company of the Holiday Inn, Syntek, the owner of the Holiday Inn, Syntek Investment Properties, Inc. ("SIPI"), and Syntek West, Inc. ("SWI"), the parent company of SIPI, Syntek's parent company. Once Syntek became the owner of the Holiday Inn, Southmark became one of the largest, if not the largest, customer of the hotel. However, by late 1988, Southmark was in deep financial trouble due to a pattern, orchestrated by Phillips and Friedman, of making unsound acquisitions, overvaluing assets, making illusory sales which produced phantom profits, keeping hidden liabilities and engaging in insider deals, and outsider cronyism. True to the pattern established by Phillips and Friedman at Southmark, Syntek engaged in related party transactions that damaged its financial condition and adversely affected its ability to fund operations and/or debt service at the Holiday Inn.

. . . . .

However, Syntek realized it needed to "justify" its default. Following the same pattern of insider deals and/or related party transactions employed by Phillips and Friedman in their Southmark dealings, Syntek, through Phillips, Friedman, and other Syntek functionaries, employed a scheme to defraud Met Life as a creditor.

The pleadings also alleged that Phillips used Syntek and other companies as his personal investment tools.

On February 12, 1991, Hughes & Luce associate John Casteneda deposed Terry Shumate, a Syntek corporate representative. Shumate was "heavily involved" in Phillips's personal matters. On February 13, 1991, Casteneda wrote Syntek's attorneys and explained that he had inadvertently introduced a document from Phillips's divorce file during Shumate's deposition. In a letter dated February 16, 1991, Syntek's attorneys asked Hughes & Luce to withdraw from its representation of appellees. Nelson refused the request three days later.

On March 7, 1991, Syntek and Phillips filed a motion to disqualify Hughes & Luce. Syntek and Phillips complained that the law firm revealed Phillips's confidential information, used the confidential information to Phillips's disadvantage, and represented appellees in a matter substantially related to the previous representation of Phillips. In a supplemental motion, Syntek and Phillips also alleged that one of their expert witnesses had knowingly been contacted by Hughes & Luce without consent. After an evidentiary hearing, the trial court denied Syntek's motion without stating the basis of its decision.

Subsequently, the case was tried to a jury. At the conclusion of Syntek's case in chief, the trial court directed a verdict against Syntek on its alleged counts of violation of breach of the duty of good faith and fair dealing, breach of confidential relationship, and unfair competition. The jury later found that MetLife, Arnholt, and Cates did not commit fraud or negligent misrepresentation against Syntek and that appellees did not engage in a civil conspiracy to defraud Syntek to purchase the hotel. The jury also found that Syntek failed to comply with the terms of the hotel note, deed of trust, "and/or" assumption agreement. Consequently, Syntek took nothing on its claims. MetLife recovered $6,720,264, prejudgment and postjudgment interest, and costs.

## DENIAL OF ATTORNEY–DISQUALIFICATION MOTION

In the fourth point of error, Syntek complains that the trial court abused its discretion in denying its motion to disqualify

Hughes & Luce. Syntek argues that disqualification is mandated by rule 1.09 of the Texas Disciplinary Rules of Professional Conduct. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(3) (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G. app. (Vernon Supp.1993) (STATE BAR RULES art. X, § 9). Rule 1.09(a)(3) provides:

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>
> .   .   .   .   .
>
> (3) if it is the same or substantially related matter.

TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a)(3). In their reply brief, appellees do not address rule 1.09(a)(3). Rather, appellees confine their argument to whether the trial court abused its discretion in failing to disqualify the law firm for alleged use of confidential information under rule 1.05(b)(3).[3] *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(b)(3) (1989).

### 1. Applicable Law

Disqualification of an attorney is a severe remedy. *See Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990) (orig. proceeding). Attorney disqualification should only be applied judiciously and with caution because it can be used as an instrument of harassment. *See Arkla Energy Resources v. Jones,* 762 S.W.2d 694, 695 (Tex. App.—Texarkana 1988, orig. proceeding); *cf.* TEX. DISCIPLINARY R. PROF. CONDUCT preamble: scope § 15 (1989) (purpose of disciplinary rules of professional conduct can be abused when they are invoked by opposing parties as procedural weapons). To prevent a motion to disqualify from being used as a dilatory tactic, trial courts must strictly adhere to an exacting standard when considering such motions. *See NCNB Tex. Nat'l*

*Bank v. Coker,* 765 S.W.2d 398, 399 (Tex. 1989) (orig. proceeding).

In deciding whether disqualification of counsel is proper, the trial court must determine whether the matters embraced within the pending suit are substantially related to the factual matters involved in the previous suit. *See NCNB Tex. Nat'l Bank,* 765 S.W.2d at 399–400; *Hoggard v. Snodgrass,* 770 S.W.2d 577, 582 (Tex.App.—Dallas 1989, orig. proceeding) (same). The movant must establish a preponderance of facts indicating a substantial relationship between the two representations. The movant must prove the existence of a prior attorney-client relationship in which the factual matters involved were so related to the facts in the pending litigation that it creates a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary. *See NCNB Tex. Nat'l Bank,* 765 S.W.2d at 400.

Sustaining the burden requires evidence of specific similarities capable of being recited in a disqualification order. *See NCNB Tex. Nat'l Bank,* 765 S.W.2d at 400. The moving party must provide the trial court with sufficient information so that it can engage in a painstaking analysis of the facts. *See J.K. and Susie L. Wadley Research Ins. & Blood Bank v. Morris,* 776 S.W.2d 271, 278 (Tex.App.—Dallas 1989, orig. proceeding). Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard. *Cf. Spears,* 797 S.W.2d at 656 (citing *NCNB Tex. Nat'l Bank,* 765 S.W.2d at 400).

If these burdens are met, the moving party is entitled to a conclusive presumption that confidences and secrets were imparted to the former attorney. *See NCNB Tex. Nat'l Bank,* 765 S.W.2d at 400 (citing *P & M Elec. Co. v. Godard,* 478 S.W.2d 79, 80–81 (Tex.1972) (orig. proceeding)). Addition-

---

**3.** Rule 1.05(b)(3), in part, provides:
(b) Except as permitted by paragraphs (c) and (d), or as required by paragraphs (e) and (f), a lawyer shall not knowingly:

.   .   .   .   .

(3) Use confidential information of a former client to the disadvantage of the former client

after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.
TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(b)(3) (1989).

ally, the moving party will also have established as a matter of law that an appearance of impropriety exists. *See Howard v. Texas Dept. of Human Servs.,* 791 S.W.2d 313, 315 (Tex.App.—Corpus Christi 1990, no writ); *see also NCNB Tex. Nat'l Bank,* 765 S.W.2d at 400. Although the former attorney will not be presumed to have revealed the confidences to his present client, the trial court should perform its role in the internal regulation of the legal profession and disqualify counsel from further representation in the pending litigation. *See NCNB Tex. Nat'l Bank,* 765 S.W.2d at 400.

## 2. Standard of Review

■ We review the trial court's denial of Syntek's attorney-disqualification motion under the abuse-of-discretion standard. *See NCNB Tex. Nat'l Bank,* 765 S.W.2d at 400 (original proceeding); *HECI Exploration Co. v. Clajon Gas Co.,* 843 S.W.2d 622, 629 (Tex. App.—Austin 1992, writ denied) (appeal). The test for abuse of discretion is not whether the facts present a proper case for the trial court's action. The test is whether the trial court acted without reference to any guiding rules or principles or acted in an arbitrary or unreasonable manner. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ When we resolve factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *See Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41–42 (Tex.1989) (orig. proceeding), *holding modified on other grounds, National Tank Co. v. Brotherton,* 851 S.W.2d 193 (Tex.1993) (orig. proceeding). However, our review of the trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding) (clear failure by trial court to analyze or apply the law correctly will constitute abuse of discretion). The failure of the trial court to apply the proper standard of law to

a motion is an abuse of discretion. *See NCNB Tex. Nat'l Bank,* 765 S.W.2d at 400 (attorney-disqualification motion).

## 3. Application of Law to Facts

■ In its response to the disqualification motion, Hughes & Luce argued that the court must focus on the pleadings and issues in the former and present representations. Hughes & Luce also argued that issues of property characterization are different from those in a complex suit involving conspiracy and fraud. Further, the law firm urged the trial court to conclude that the issues in the former and present representations are not substantially related. Appellees' expert witness, Professor Geoffrey Hazard, acknowledged that the substantial relationship involves comparing information relevant to the former and present representations. His analysis of why no substantial relationship exists in the present case consisted of a comparison of the subject matter and issues involved in the former and present representations.

If merely comparing subject matter and issues were the proper legal standard by which a trial court determines the existence of a substantial relationship, we might agree that the record demonstrates no abuse of discretion. It is true that a party moving to disqualify must delineate with specificity the subject matter, issues, and causes of action presented in the former action. *See J.K. and Susie L. Wadley Research Ins. & Blood Bank,* 776 S.W.2d at 278. A mere comparison of subject matter and issues, however, is not the proper legal test. *See NCNB Tex. Nat'l Bank,* 765 S.W.2d at 400 (trial court must determine whether moving party has proven existence of prior attorney-client relationship in which *factual matters involved* in previous representation were so related to facts in pending litigation that it creates genuine threat that confidences revealed to former counsel will be divulged to his present adversary); *J.K. and Susie L. Wadley Research Ins. & Blood Bank,* 776 S.W.2d at 278 (painstaking factual analysis is required in determining existence of substantial relationship); *see also* Charles W. Wolfram, Modern Legal Ethics § 7.4, at 370 (1986) (pains-

taking factual examination, practiced by majority of courts, is preferable to more general tests).

■ Although the matters involved in previous and present representations may not be identical, information common to both representations may reveal a substantial relationship. *See Clarke v. Ruffino,* 819 S.W.2d 947, 951 (Tex.App.—Houston [14th Dist.] 1991, writ dism'd w.o.j.); *see also* TEX. DISCIPLINARY R. PROF. CONDUCT 4.02 cmt. 4A (1989) ("substantially related" test primarily involves situations where lawyer could have acquired confidential information concerning prior client that could be used either to that prior client's disadvantage or for advantage of lawyer's current client or some other person); AMERICAN BAR ASSOCIATION AND THE BUREAU OF NATIONAL AFFAIRS, INC., LAWYER'S MANUAL ON PROFESSIONAL CONDUCT 51:215 (1993) (whatever factors courts compare to determine existence of substantial relationship, analysis is concerned with information relevant to representations).

■ Douglas C. Williamson, former senior vice president and chief operating officer of Syntek West and senior vice president of most of its affiliated companies, testified at the disqualification hearing. Williamson stated that he provided information to Hughes & Luce on behalf of Phillips in the divorce and premarital agreement representations. Williamson explained that Phillips was contemplating marriage with a woman who insisted on an award of at least $10,000,000 in the event of divorce. He said that it was "extremely important" for Hughes & Luce to understand Phillips's "total financial picture" in assessing whether Phillips should enter the premarital agreement.

Williamson stated that he provided financial information to Hughes & Luce on the issues of:

- Syntek's related-party transactions;
- the identity of business entities in Phillips's control; how they were structured; their financial status; how they related financially to one another; the past, present, and future value of their assets;
- every source of Phillips's income; and

- all of Phillips's assets.

Williamson said that he also disclosed to Hughes & Luce financial information concerning the purchase of the Holiday Inn Crowne Plaza Hotel because the transaction was "extremely significant" to Phillips's financial situation. He also testified that the law firm advised that Phillips should make future acquisitions with funds of a Syntek company to ensure the new acquisition would be characterized as separate property.

Hughes & Luce attorney Good, who did day-to-day work on Phillips's file, testified by deposition. Good explained that the divorce representation consisted of disclosing existing property and listing property to be divided. He testified that the divorce representation required information about Phillips's liabilities and assets. The premarital agreement representation involved identifying Phillips's separate property, determining what type of income it would produce, and planning to avoid commingling of property. Good agreed that it was necessary to consider financial information to determine whether property was separate property in order to avoid commingling the estates. Good recalled that he received information about the relationship between Phillips, Southmark, and the Syntek companies. He generally remembered that Hughes & Luce advised Phillips to do business through existing companies if he desired acquisitions to be classified as separate property.

Hence, the record reveals that the subject matter of the previous representations required disclosure and analysis of a wide range of information concerning Phillips's financial status and business practices. Information that Hughes & Luce acquired in its previous representations of Phillips is relevant to appellees' amended pleadings of January 25, 1991. Phillips's financial information relevant to the past and present matters includes information concerning related-party transactions, information about Phillips's businesses and their relationship to one another, the hotel purchase, and Phillips's use of Syntek as a personal investment tool. Although the precise issues or subject matter in the previous representation and the present litigation are not identical, the record

nonetheless demonstrates a substantial relationship. *See Clarke*, 819 S.W.2d at 951. The factual matters involved are so related that a genuine threat exists that the confidences revealed to former counsel will be divulged to appellees. *Cf. J.K. Wadley Research Ins. & Blood Bank*, 776 S.W.2d at 278. We conclude that the trial court could not properly have denied the disqualification motion had it considered the factual and informational relationship between the former representation and the present litigation.

■ We also conclude that the record contains no basis for a conclusion that the present matter was not adverse to Phillips. Rule 1.09(a) states:

> Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client. . . .

TEX. DISCIPLINARY R. PROF. CONDUCT 1.09(a). Appellees contended that Phillips was not a party to the present lawsuit and would not be liable for any judgment against Syntek. Appellees offered expert opinion in support of this contention. Appellees acknowledged, however, in the trial court that Phillips was an indirect shareholder of Syntek. The record indicates that Phillips owned a large controlling interest in Syntek. Appellees argued that this interest was not adverse to the present matter. We disagree. Syntek's responsibility for a substantial debt was an issue in the present case. Accordingly, Hughes & Luce's representation of MetLife in the present matter was adverse to Phillips.

■ Appellees also argued that Syntek and Phillips waived disqualification by failing to timely file their motion. Additionally, appellees urged equitable grounds for denial of disqualification. The record and the law did not permit the trial court to deny disqualification upon either ground.

■ The Texas Supreme Court has condemned the dilatory filing of attorney-disqualification motions. *See Spears*, 797 S.W.2d at 656 n. 1. The Texas Disciplinary Rules of Professional Conduct recognize that their purpose can be abused when they are invoked as procedural weapons. *See* TEX. DISCIPLINARY R. PROF. CONDUCT preamble: scope § 15 (1989). Accordingly, a party who fails to file its motion to disqualify counsel in a timely manner waives the complaint. *See Turner v. Turner*, 385 S.W.2d 230, 236 (Tex. 1964); *HECI Exploration Co.*, 843 S.W.2d at 628; *Conoco Inc. v. Baskin*, 803 S.W.2d 416, 420 (Tex.App.—El Paso 1991, orig. proceeding).

Appellees asserted that Syntek and Phillips waited twenty-three months to file the disqualification motion. Appellees' expert James P. Wallace stated in an affidavit that an issue of waiver existed because the lawsuit had been pending approximately two years when the disqualification motion was filed. He also supported his conclusion by stating that the request to disqualify was made approximately one month prior to the date of a preferential trial setting. Professor Hazard testified that he reached a similar conclusion to that of Wallace.

■ The record, however, contains no basis for a conclusion that disqualification was waived. Syntek filed the present action in April 1989. The substantial relationship between the former and present representations first became apparent when appellees filed amended pleadings on January 25, 1991. Hence, appellees made apparent the violation of rule 1.09(a)(3) well into the proceedings below. Syntek and Phillips filed their motion to disqualify on March 7, 1991. The claim of an approximate two-year delay is unfounded. Approximately one month passed from the time the violation of rule 1.09(a)(3) became apparent to the time the disqualification motion was filed. *Cf. Insurance Co. of N. Am. v. Westergren*, 794 S.W.2d 812, 815 (Tex. App.—Corpus Christi 1990, orig. proceeding [leave denied]) (although case had been pending "for some time" before motion to disqualify was filed, motion to disqualify nonetheless was timely because it was filed approximately two months after substantial relationship first was raised by amended pleadings). Nor does the record support appellees' claim that disqualification was waived because the motion was filed one month before a preferentially set trial date. Syntek was diligent in filing the motion. *See*

*Westergren,* 794 S.W.2d at 815. The record in this case, therefore, contains no indication that the disqualification motion was filed as a tactical weapon. *Cf. Spears,* 797 S.W.2d at 658 (noting disqualification motion had all appearances of tactical weapon).

Nor does appellees' legal authority support their waiver argument. In support of their argument, appellees cite *Turner. See Turner,* 385 S.W.2d at 236. *Turner,* however, is distinguishable. The *Turner* court held that a party who filed a disqualification motion eighteen months after it learned of a violation had waived disqualification. *See Westergren,* 794 S.W.2d at 815 (although case had been pending "for some time" before motion to disqualify was filed, court distinguished *Turner* because motion was filed approximately two months after amended counterclaim first demonstrated existence of substantial relationship). The motion for disqualification in the present case was filed sooner after grounds for disqualification became apparent than was the motion in *Westergren. See Westergren,* 794 S.W.2d at 815 (finding abuse of discretion in failing to grant disqualification order).

■ Appellees also argued that a balancing of equities required denial of attorney disqualification. Appellees urged that disqualification should be denied in light of "the good faith actions" of Hughes & Luce and the damage that disqualification would cause MetLife.

The actions to which appellees referred, however, are not relevant to disqualification based upon rule 1.09(a)(3). Accordingly, the trial court was without discretion to deny disqualification based upon those grounds.

■ Appellees also argued that disqualification would cause MetLife damage. They asserted that they had paid $1,447,244.50 in legal fees and $497,344.80 in costs. They also argued that Hughes & Luce attorney Richard Nelson had the most knowledge of MetLife's hotel portfolio.

■ Considering the record before us, we do not understand how disqualification ra-

tionally could be denied on the basis of this argument. We already have noted that the record shows appellees violated rule 1.09(a)(3) well into the proceedings and that the motion to disqualify was timely filed. Neither the record nor the law supports denying relief to a party who diligently responds to a late-arising violation of rule 1.09(a)(3) merely because the offending party suffers loss by reason of its violation. *Cf. Westergren,* 794 S.W.2d at 815 (although case had been pending "for some time" prior to filing of motion to disqualify, motion was not waived because motion was filed approximately two months after substantial relationship first was raised by amended pleadings). We conclude that the trial court committed an abuse of discretion by denying the disqualification motion. Such error requires reversal of the judgment. *See Howard,* 791 S.W.2d at 316 (reversal required because conflict of interest cast grave shadow over fairness of judicial process). We sustain the fourth point of error.[4]

Accordingly, the trial court's judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

4. Because our resolution of this point of error is dispositive of this appeal, it is not necessary for us to address Syntek's other arguments.