In re C.C., C.C., C.C., C.C., and K.B., Children

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-206-CV

IN THE INTEREST OF C.C., C.C.,

C.C., C.C., AND K.B., CHILDREN 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is a termination of parental rights appeal.  Following a nonjury trial in May 2004, the trial court terminated the parental rights of Appellant Lynetta H. in C.C.(1), C.C.(2), C.C.(3), C.C.(4), and K.B.
(footnote: 2)  The trial court also terminated the parental rights of Appellant Marcell B. in K.B.  In two points, Appellants argue that 1) the evidence is factually insufficient to support termination of their parental rights, and 2) the trial court erred by denying their motion for continuance.  We will affirm.

Background Facts

The parents of C.C.(1) born June 3, 1995, C.C.(2) born September 29, 1997, C.C.(3) born April 20, 1998, and C.C.(4) born April 16, 1999 are Appellant Lynetta H. and Richard C.
(footnote: 3)  Lynetta and Richard were married in February 1995 but separated in 1999, and the children have not had contact with their father since December 1999.  After separating from Richard, Lynetta began dating and living with Appellant Marcell B.  Marcell and Lynetta are the biological parents of K.B., who was born September 23, 2001.

Several witnesses testified about the lengthy history of abuse and neglect suffered by the five children. Lynetta testified that during her marriage to Richard he was physically and verbally abusive.  She stated that he used drugs and drank a lot and that she usually had a busted lip or black eye.  Lynetta also said that Richard physically assaulted her when she was pregnant with C.C.(1). Lynetta testified that on one occasion Richard “accidentally hit” C.C.(2) when he was trying to attack her.  The police were called and Lynetta and Richard were both arrested.
(footnote: 4)  Afterwards, the Tyler TDPRS
(footnote: 5) opened a case regarding an allegation of possible physical abuse of the children.  Although during her testimony Lynetta stated that Richard had only hit one of the children that one time, she stated on other occasions that he was abusive to the children and that she had to cover the children with her body to protect them from Richard.  When Lynetta was released from jail, she left Tyler and moved into a women’s shelter in Fort Worth.
(footnote: 6)
 During December 2001, the Fort Worth TDPRS division received a report alleging “neglectful supervision” of the five children.  Apparently, Lynetta had left her children unsupervised at a battered women’s shelter while she went to an appointment at John Peter Smith Hospital.  During the investigation, TDPRS received two additional reports: one on February 5, 2002 and the other one around February 13, 2002.  The allegations involved physical abuse and neglectful supervision.  However, at that time TDPRS was unable to make a determination regarding physical abuse because although the children did have injuries, the injuries were not on vital body parts; the children would not say how they received the injuries; and the parents admitted to disciplining the children but would not admit to causing the injuries.  The report regarding neglectful supervision involved C.C.(4) being observed outside for about twenty minutes in thirty-five degree weather after it had snowed, wearing only a diaper.  TDPRS made the decision not to remove the children at that time, but instead chose to implement a service plan for Lynetta and her children.

Additionally, there was testimony from Tamara Buescher, an assistant principal at Remynse Elementary School, that during August through September 2002, C.C.(2) came to school on a weekly basis with some type of mark on his body.  She testified that she remembered one time when she observed C.C.(2)’s ear being totally black like “someone had grabbed it or he had been hit in the ear, but from the lobe to the top of his ear, it was pretty much black.”  She also stated that he had a cut and burn on his mouth, and that he “always had spots on his legs and arms on a continual basis.”

During the time that TDPRS was working with the family and providing services, two more reports were made involving abuse of the children, one in November 2002 and the other in December 2002.  Allison Chaney, an investigator for TDPRS, spoke with some of the children regarding the December report.  She stated that when she met with C.C.(2) in the counselor’s office at his school, she observed several injuries
(footnote: 7) on the child, and he told her that his mother and Marcell had burned him with cigarettes.  He also told her that Marcell was hurting his mother.  In addition, Chaney interviewed C.C.(3) regarding the abuse.  C.C.(3) told Chaney that C.C.(2) was burned with a lighter by Marcell because C.C.(2) was being bad.  C.C.(3) also stated that on several occasions Marcell would lock her and her sister in the bathroom all night.  Furthermore, she told Chaney that Marcell would hit her on the bottom of her feet with a belt and also said that she had seen Marcell hit her mother.  Another report was made in January 2003 regarding physical abuse; C.C.(2) had a bruise on the inside of his ear, and C.C.(3) had a blackened eyelid.  Based on all of the previous reports, the children were removed from the home in January 2003.

Theresa Martin, a TDPRS caseworker, testified that by the fall of 2003, Lynetta and Marcell had completed psychological evaluations, parenting classes, anger management classes, and counseling.  As of November 25, 2003, the children were court ordered back to Lynetta and Marcell.  The case was then transferred to Maureen Oderoh, who worked in the family reunification unit of TDPRS.  After the children were returned to Appellants, the children continued to have behavioral problems at school and suffer additional physical abuse by Appellants.  In February 2004, the children were removed from Appellants’ home for a second time.  During April 2004, Dr. Rhonda Polakoff met with the children regarding the abuse.  She testified that in her expert opinion there is a high probability that the children have been abused.

Richard and Marcell did not appear at trial.  Lynetta testified at trial and attempted to explain the children’s behavioral issues, but admitted that it was overwhelming raising five children.  After hearing all the evidence, the trial court terminated the parental rights of Lynetta, Marcell, and Richard on June 14, 2004.  On June 28, 2004, the trial court awarded temporary possessory conservatorship to the children’s relatives as follows: Chester M. received possession of K.B., Shaunette S. received possession of C.C.(1), Winifred B. received possession of C.C.(3), and Etta H. received possession of C.C.(2) and C.C.(4).  This appeal followed.

Factual Sufficiency

Standard of Review

A parent’s rights to “the companionship, care, custody, and management” of his or her children are constitutional interests “far more precious than any property right.”  
Santosky v. Kramer
, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982).  “While parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.”  
In re C.H.
, 89 S.W.3d 17, 26 (Tex. 2002).

In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child’s right to inherit.  
Tex. Fam. Code Ann.
 § 161.206(b) (Vernon Supp. 2004-05); 
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.  
Holick,
 685 S.W.2d at 20-21;
 In re D.T.
, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh’g).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence.  
Tex. Fam. Code Ann. 
§§ 161.001, 161.206(a); 
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980).  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.  
G.M.
, 596 S.W.2d at 847; 
D.T.
, 34 S.W.3d at 630.  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”
  Tex. Fam. Code Ann.
 § 101.007 (Vernon 2002).

The higher burden of proof in termination cases alters the appellate standard of factual sufficiency review.  
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002).  “[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.”  
Id
.  In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine “whether the evidence is such that a factfinder could reasonably form a firm belief or conviction” that the grounds for termination were proven.  
Id
.  Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parents violated one of the conduct provisions of section 161.001(1) and that the termination of the parents’ parental rights would be in the best interest of the child.  
Id
. at 28.

Grounds for Termination of Appellant’s Parental Rights

The trial court found that Appellants violated two provisions of the family code dealing with endangerment of a child.  
See
 
Tex. Fam. Code Ann
. § 161.001(1)(D),(E).  Both Appellants challenge the factual sufficiency of the evidence to support these grounds for the termination of their parental rights.  
Texas Family Code Section 161.001(1)(E)

Under section 161.001(1)(E) of the Texas Family Code, Appellants’ parental rights may be terminated if the trial court found by clear and convincing evidence that they “engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.”  
Tex. Fam. Code Ann. 
§ 161.001(1)(E).  Under this section, the term "endanger" means to expose to loss or injury, to jeopardize.  
In re M.C.
, 917 S.W.2d 268, 269 (Tex. 1996).  There must be evidence of endangerment to the child's physical or emotional well-being as the direct result of the parent's conduct.  
In re R.D.
, 955 S.W.2d 364, 367-68 (Tex. App.—San Antonio 1997, pet. denied).  Subsection (E) requires a "course of conduct."  
Id.
  Accordingly, when analyzing a jury’s findings pursuant to subsection (E), we must determine whether sufficient evidence exists that the endangerment of the child’s physical well-being was the direct result of the parent’s conduct, including acts, omissions, or failures to act.  
In re D.M.
, 58 S.W.3d 801, 811-12 (Tex. App.—Fort Worth 2001, no pet.).  Termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required.  
Tex. Fam. Code Ann
. § 161.001(1)(E); 
D.T
., 34 S.W.3d at 634; 
In re K.M.M.
, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.).

Here, the record supports the conclusion that C.C.(1), C.C.(2), C.C.(3), C.C.(4), and K.B. have been physically abused while in Appellants’ care.  During Dr. Polakoff’s interview with the children, C.C(1) stated that her mother whips her with a tree branch, and C.C.(3) and (4) stated that their mother and stepfather had tried to drown them.  The children have also told their foster mother that Marcell forced their heads under the water.  The record also recounts numerous physical injuries of the children.  For example, 1) C.C.(2)’s abrasion on his cheek and his entire ear turning black from being slapped, 2) the burns on both C.C.(2)’s and C.C.(3)’s arms, 3) C.C.(2) stating that his mother and Marcell burn him with cigarettes when he is bad, 4) C.C.(2)’s bruises to his lower back and legs, and 5) two burn marks on K.B.

In addition, the record reveals many other incidents of physical abuse too numerous to list.  The record contains overwhelming evidence that these five children were subjected to severe and repeated physical abuse.  Applying the appropriate standard of review, we hold that the evidence is such that a trier of fact could reasonably form a firm belief or conviction that Appellants knowingly engaged in conduct that endangered C.C.(1)’s, C.C.(2)’s, C.C.(3)’s, C.C.(4)’s, and K.B.’s physical or emotional well-being.  Consequently, we hold that there is factually sufficient evidence to support the termination of Lynetta H.’s and Marcell B.’s parental rights based upon that ground.

If multiple grounds are alleged for termination, the evidence is sufficient if it supports just one of the alleged conduct grounds.  
In re W.J.H.
, 111 S.W.3d 707, 715 (Tex. App.—Fort Worth 2003, pet. denied).  Therefore, we are not required to address whether the evidence is sufficient to establish termination under section 161.001(1)(D).

Best Interests

Additionally, Appellants argue that termination of their parental rights would not be in the best interest of the children.  In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  
Id.
 § 161.001; 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984); 
Swate v. Swate
, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.  
Tex. Dep't of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).

Our inquiry here is limited to whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parents’ parental rights would be in the best interest of the child.  
In re C.H.
, 89 S.W.3d at 28.

Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).  These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  
In re C. H
., 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  
Id. 
 On the other hand, the presence of scant evidence relevant to each 
Holley
 factor will not support such a finding.  
Id
.

A review of the record in this case supports the conclusion that there was sufficient evidence to support the trial court’s findings that termination of Appellants’ parental rights was in the best interest of C.C.(1), C.C.(2), C.C.(3), C.C.(4), and K.B.  For example, although the children have some level of bonding with their mother, the record reveals that they seemed to be excited about being placed with a foster family.  Furthermore, C.C.(1) stated that she did not want to go back and live with her mother and Marcell.  Lynetta testified that she had nothing to give her children other than the “clothes on my back.” Additionally, the evidence showed that the children have severe emotional and medical needs that Appellants have neglected to address.  Sherry McReynolds, the court-appointed special advocate, did recommend against termination, but testified that she was advocating only supervised visits because of the risk involved.  However, she also testified that she did not believe the Appellants could adequately parent these five children.

The evidence shows that Lynetta failed to comply with the service plan requirement that she continue counseling, and she never completed the drug assessment that TDPRS requested.  The evidence also shows that Marcell has not engaged in any services since the children were removed for a second time in February 2004.  The repeated abuse of the children and absence of a proper parent-child relationship along with evidence relevant to the other 
Holley
 factors demonstrates that the evidence is factually sufficient to support the trial court’s findings that termination of Appellants’ parental rights was in the best interest of C.C.(1), C.C.(2), C.C.(3), C.C.(4), and K.B.  We overrule Appellants’ first point.

Motion for Continuance

Appellants argue in their second point that the trial court erred by denying their motion for continuance.  We review a trial court's ruling on a motion for continuance under an abuse of discretion standard.  
BMC Software Belg., N.V. v. Marchand, 
83 S.W.3d 789, 800 (Tex. 2002).  An appellate court cannot substitute its judgment for the trial court’s, but must only determine whether the trial court’s action was so arbitrary as to exceed the bounds of reasonable discretion.  
Philipp Bros. Inc., v. Oil Country Specialists, Ltd.
, 709 S.W.2d 262, 265 (Tex. App.—Houston [1st Dist.] 1986, writ dism’d).

Here, Appellants jointly filed a motion for continuance on May 13, 2004. The motion requested that the trial be continued in order for home studies to be conducted on relatives who could potentially keep the children.  Appellants argue that pending the results of these home studies, the children could have been placed with relatives prior to termination of their parental rights and that by denying the motion for continuance, the trial court denied Appellants of the right to use relative placement as a method of defending the termination procedure.  The State argues that the issue of conducting home studies on the relatives has virtually nothing to do with the termination cause of action.

The family code provides that a court shall place a child removed from the child’s custodial parent with a noncustodial parent, or with a relative of the child if placement with the noncustodial parent is inappropriate, unless placement with the noncustodial parent or relative is not in the best interest of the child.  
Tex. Fam. Code Ann
. § 262.201(e) (Vernon 2002).  Reasonable efforts should be made with respect to a child to be placed in foster care to preserve and reunify families and to give preference to an adult relative over a nonrelated caregiver in determining the placement of a child.  42 U.S.C.A. § 671(a)(15)(B), (19) (2003).  The trial court evaluates the efforts of the agency to identify relatives who could provide the child with a safe environment if the child is not returned to a parent.  
See 
Tex. Fam. Code Ann
. § 263.306(a)(6).

Here, Appellants provide no authority to suggest that there is either a statutory or a common-law duty imposed on TDPRS to make such a placement or to investigate such a placement 
before
 a party’s parental rights may be terminated.  The authority that Appellants cite in support of their argument is simply not applicable to the present case.
(footnote: 8)  During the hearing, TDPRS indicated that it would consider Appellants’ relatives as a viable option for placement of the children.  However, TDPRS’s concern was that further home studies needed to be completed before a decision could be made regarding placement of the children and that regardless of the results, it would still seek termination of Appellants’ parental rights.

The determination of where a child will be placed is a factor in evaluating the child’s best interest, but it is not a bar to termination that placement plans are not final or that placement will be with nonrelatives.  
See In re C.H.
, 89 S.W.3d at 28.  Accordingly, we hold that the trial court did not abuse its discretion by denying Appellants’ motion for continuance.  Appellants’ second point is overruled.

Conclusion

Having overruled Appellants’ two points, we affirm the trial court’s judgment.

PER CURIAM

PANEL A:  CAYCE, C.J.; HOLMAN, J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

DELIVERED:  May 26, 2005

FOOTNOTES
1:
See
 Tex. R. App. P.
 47.4.

2:
To protect the privacy of the parties involved in this appeal, we identify the children by initials only and Appellants by first name and last initial only.  
See
 
Tex. Fam. Code Ann
. § 109.002(d) (Vernon 2002).  We also include numerical references of the children with identical initials from oldest to youngest, for clarity purposes.  

3:
The rights of Richard C. in all of the children subject to this appeal were also terminated.  However, no appeal was filed.

4:
Lynetta was arrested on an old warrant for assaulting Richard. 

5:
The name of the agency has changed to the Texas Department of Family and Protective Services effective September 1, 2003.  
See
 Act of June 2, 2003, 78th Leg., R.S., ch. 198, §§ 1.01(b)(4)(J), 1.27, 2003 Tex. Gen. Laws 611, 641, 729.  However, because the pleadings and judgment in the trial court refer to the Texas Department of Protective and Regulatory Services, for the sake of consistency will do likewise in this opinion.

6:
However, the record reveals that Lynetta told Sherry McReynolds, a child advocate volunteer, that she, Marcell, and the children moved in with her mother when they moved to Fort Worth.

7:
Chaney testified that C.C.(2) had a mark on his chin and lip and his ear was red and swollen and looked like there was a dime-sized knot on the top of it.

8:
Appellants cite to a case involving a default divorce decree.  
See Jones v. Jones
, 64 S.W.3d 206, 210-11 (Tex. App.—El Paso 2001, no pet.) (listing balancing factors the trial court should use in determining whether to permit an incarcerated person to appear at trial), 
disapproved in part on other grounds by
, 
In re Z.L.T.
, 124 S.W.3d 163 (Tex. 2003).